**PLAYBOY ENTERPRISES, INC., Plaintiff,**

v.

**U.S. CUSTOMS SERVICE, Defendant.**

**Civil Action No. 96–01915.**

United States District Court, District of Columbia.

March 19, 1997.

Douglas P. Lobel, Kelley, Drye & Warren, L.L.P., Washington, DC, David Francescani, Darby & Darby, New York City, for Playboy Enterprises, Inc.

Marina Utgoff Braswell, U.S. Attorney's Office, Washington, DC, for U.S. Customs Service.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on Plaintiff's Motion for Attorney Fees and Costs pursuant to the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552(a)(4)(E).[1] The Court has considered the motion and the opposition thereto, and heard argument on March 4, 1997.

## BACKGROUND

Plaintiff is the registered owner of a number of trademarks including U.S. Registered trademarks for its RABBIT HEAD DESIGN ("Rabbit Head Design") mark. It has been using its Rabbit Head Design mark since 1954 with a variety of merchandise, including clothing, footwear, jewelry, perfume, wallets, sunglasses, sporting equipment, videos, magazines and television programs. The Rabbit Head Design mark is recognized throughout the world and Plaintiff has been actively engaged in protecting it from being misused by exerting efforts to rid the marketplace of counterfeit goods.

In November 1994, a large number of cartons of wearing apparel bearing the Rabbit Head Design mark were confiscated by the U.S. Customs Service (the "USCS") in Laredo, Texas. Plaintiff's attorneys were notified of the confiscation by letter dated December 19, 1994 and requested more information from the USCS with respect to the confiscation.

---

1. Plaintiff has applied for an award of attorney fees at $44,843.00 and costs at $11,034.69.

Plaintiff's attorneys received a response to their request by letter dated April 28, 1995 (the "April 28 Letter"). The April 28 Letter informed Plaintiff, *inter alia*, that 112 cartons of wearing apparel had been seized by the USCS. The wearing apparel was considered to infringe Plaintiff's Rabbit Head Design mark and was forfeited by the government. Since the April 28 Letter did not advise Plaintiff as to who the manufacturer of the seized wearing apparel had been, Plaintiff sent the USCS a letter on May 4, 1995 requesting further information under the FOIA related to "the source and ultimate destination of the infringing goods" and "a sample of the wearing apparel that was seized" (collectively, the "FOIA Material").

By letter dated August 18, 1995, the office of the USCS Regional Counsel in Houston, Texas informed Plaintiff that the search of documents was complete and that a fee of $21.46 was due before the information would be released. Plaintiff sent a check in that amount by letter dated August 24, 1995.

After receiving Plaintiff's check, the USCS denied Plaintiff's request for the FOIA Material in a letter dated August 30, 1995. The USCS claimed that the FOIA Material was exempt from disclosure under 5 U.S.C. § 552(b)(4) as "trade secrets and commercial or financial information, obtained from a person which is privileged or confidential and, therefore, exempt from disclosure." The USCS also claimed that the samples of apparel requested by Plaintiff were not "records" for purposes of the FOIA. Plaintiff appealed the agency's initial decision through the administrative process, and its appeal was denied on June 21, 1996.

Plaintiff filed suit in this court under the FOIA on August 16, 1996, seeking the withheld materials. The parties agreed that each would file motions for summary judgment in order to resolve their dispute at a motions hearing. The parties appeared before this Court for a status hearing in October 1996. On December 19, 1996, the government stated that it had reconsidered its position and

would produce all of the documents requested by Plaintiff.[2] The government further stated that it could not provide Plaintiff with samples because all of the seized wearing apparel had been mistakenly destroyed. On those bases, the government moved to dismiss Plaintiff's complaint as moot.

This Court held a hearing on February 4, 1997 to consider the government's motion. Plaintiff opposed the motion, and sought an advisory opinion from the Court as to whether clothing samples are "records" subject to the FOIA. While the Court declined to issue such an advisory opinion in its order of dismissal dated February 11, 1997 (the "Order of Dismissal"), it did retain jurisdiction over this case to decide Plaintiff's request for attorney fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E). The Court also specifically retained jurisdiction for two years to allow Plaintiff to "move to reopen the case should Plaintiff's subsequent FOIA request[s] for information or clothing samples relating to goods seized by the USCS that bear a counterfeit Playboy trademark be denied, or Plaintiff deems there is a need for immediate action to prevent the destruction of information or clothing samples by the USCS such as occurred in this case."

## ANALYSIS

There remain two issues before this Court (1) whether Plaintiff should be awarded attorney fees and costs; and (2) if so, what should be the amount of Plaintiff's award.

## I. Awarding Attorney Fees and Costs to Plaintiff

▮ The FOIA allows a district court to "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). In order to determine whether a FOIA litigant should be awarded such fees and costs, the Court must engage in a two-step analysis. First, the court must determine whether

---

**2.** The government's decision to release the documents included in the FOIA Material only came about after the USCS had consulted with K–Mart and obtained its permission for the release. K– Mart Mexico and its Mexican affiliate, Trading KM S.A. de C.V. of Mexico were the alleged principals in the importing of the seized wearing apparel.

an FOIA litigant has "substantially prevailed" and is therefore eligible for fees and costs. Second, if the FOIA litigant is deemed eligible, the court must make a discretionary determination as to whether the FOIA litigant is entitled to recover its costs. *See, e.g., Tax Analysts v. Department of Justice,* 965 F.2d 1092, 1093 (D.C.Cir.1992).

### A. Plaintiff has "substantially prevailed" under 5 U.S.C. § 552(a)(4)(E)

In order to demonstrate that Plaintiff has "substantially prevailed," the plaintiff must show that the filing and pursuing of the lawsuit was reasonably necessary to produce the requested records and that a causal nexus exists between the suit and the agency's disclosure of records. *Maynard v. CIA,* 986 F.2d 547, 568 (1st Cir.1993).

■ Plaintiff has demonstrated that it has "substantially prevailed." The government only agreed to release the requested records to Plaintiff on December 19, 1995, well after Plaintiff had exhausted its administrative remedies in an effort to reverse USCS's assertion of its claimed "trade secret" FOIA exemption under 5 U.S.C. § 552(b)(4), and well after it had filed its lawsuit in this Court. Defendant does not dispute that the lawsuit resulted in the release of the requested records to Plaintiff.

■ The government argues that Plaintiff did not "substantially prevail" in this suit since the suit did not produce sample clothing in response to plaintiff's FOIA request for such items, and Plaintiff did not obtain an advisory opinion from the Court on whether clothing samples are "records" subject to the FOIA. In asserting such an argument, the government seeks to make a virtue of its own missteps. In effect the government is attempting to assert a new FOIA exemption which can be best described as the "Hubris Exemption."

This Court did not reach the issue of whether Plaintiff was entitled to receive clothing samples as "records" under the FOIA because the USCS's inexplicably destroyed the clothing samples thus rendering the issue moot. The government will not be permitted to profit from its ill advised actions. The Court finds that Plaintiff has "substantially prevailed" as set forth under 5 U.S.C. § 552(a)(4)(E) and is thereby eligible for consideration of a fee and cost award.

### B. Plaintiff's entitlement to fees and costs under the FOIA

■ In determining whether an eligible FOIA litigant is entitled to fees, this Circuit has directed district courts to consider at least four criteria: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding. *See Tax Analysts,* 965 F.2d at 1094; *Cotton v. Heyman,* 63 F.3d 1115, 1117 (D.C.Cir. 1995); *Chesapeake Bay Found., Inc. v. United States Dep't of Agric.,* 11 F.3d 211, 216 (D.C.Cir.1993), *cert. denied,* 513 U.S. 927, 115 S.Ct. 315, 130 L.Ed.2d 277 (1994). The sifting of those criteria is a matter of district court discretion. *Church of Scientology v. Harris,* 653 F.2d 584, 590 (D.C.Cir.1981).

#### 1. "The public benefit derived from the case"

The first part of the test focuses on whether a "public benefit" exists in this matter. While any disclosure under the FOIA may benefit the public in some way by increasing public knowledge about the government, this Circuit has defined a "public benefit" for the purpose of awarding attorney fees and costs as an occasion when "the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Cotton,* 63 F.3d at 1120. The government argues that the FOIA Material fails to meet this standard since it is relevant only to a trademark infringement case that Plaintiff might bring, not to citizens making "vital political choices."

■ The government's limiting the "public benefit" criteria to enhancing "the fund of information that citizens may use in making vital political choices" is much too narrow. The public interest in this case has been benefitted in a different way.

■ Our trademark laws are an important part of our market system. America is a country of ideas, and those ideas with commercial merit are worth protecting from counterfeiters. This is necessary to encourage the innovation that has made great contributions to this nation's unparalleled free market system. One has only to travel to foreign lands to view the rampant commercial counterfeiting that goes unchecked to appreciate the importance of our trademark laws. Individuals and enterprises in the private sector with new and creative ideas that have value in the market place must be able to protect those ideas. While the private sector must police its intellectual property rights, the government needs to assist in this endeavor. What is more, this Court finds that the notion that "public benefits" and "private benefits" must be mutually exclusive is not supportable. Such benefits are often not so easily separable, and in this case we have both.

■ By initiating this action, Plaintiff has advanced a "public benefit." Plaintiff has brought into question the practices and policies of the USCS with respect to the seizure of counterfeit goods. During the hearing on Plaintiff's summary judgment motion, coun-

sel for the government admitted that these practices and policies are currently under review by the USCS.[3] Moreover, Plaintiff's action has engendered a degree of publicity and concern among trademark owners, thereby sparking debate within the intellectual property rights community.[4]

A broader definition of "public benefit" under the FOIA is consistent with the legislative history of the act. As the Committee Report set forth, while a court "should not ordinarily award fees [when the suit is to advance the private commercial interests of the complainant]," such an award may be appropriate when "the government officials have been recalcitrant in their opposition to a valid claim or have been otherwise engaged in obdurate behavior."[5] The government has certainly not been as cooperative as it should have been in opposing Plaintiff's reasonable requests for documents and has not offered an acceptable explanation as to why it withheld the requested FOIA documents until the Plaintiff filed its lawsuit.

The government's efforts to preclear the release of the FOIA Material with K–Mart is particularly troubling and difficult to under-

3. The government's papers state that "at no time was either the initiation or the outcome of [this case] a factor in proposing changes in the disclosure rules [regarding seized property]. Such changes were in fact already cast in final form before the Playboy matter came to the attention of this office. Nor has the case influenced Customs to make any changes to the proposed regulation." Atwood Decl. ¶ 10. This circuit has also stated that "our recent decisions make clear that [a district court considering a request for attorney fees by a FOIA plaintiff] must consider 'the public benefit derived from this case.' " *Chesapeake Bay Foundation v. Department of Agriculture*, 108 F.3d 375, 377 (D.C.Cir.1997). The government's efforts to make remedial changes in its disclosure rules regarding seized property make the "public benefit" associated with such changes all the more apparent. Moreover, even if the events of this case may not have already influenced the government, they may yet influence the government before the rulemaking process is completed. Indeed, to enact new rules and procedures without reviewing the facts of this case would reflect an agency not acting responsibly. Where mistakes occur as they did in this case, a responsible agency makes a "lessons learned" review to assure those mistakes are not repeated.

4. When this case was first filed, it was reported in a story in the *National Law Journal* on September 9, 1996 and also reported on Law Cast, an audio legal information service. Copies of the complaint have also been requested by at least three attorneys who were involved in similar disputes with the USCS related to seized counterfeit goods. Information about the case was also requested by the U.S. Anti–Counterfeiting Coalition, a trade association whose objective is to reduce the amount of counterfeit goods entering the United States. Supplemental Francescani Declaration, ¶¶ 16–20.

5. S.Rep. No. 854, 93rd Cong., 2d Sess. 19 (1974), reprinted in House Comm. on Gov't Operation & Senate Comm. on the Judiciary, 94th Cong., 1st Sess., Legislative History of the Freedom of Information Act Amendments of 1974, pt. 1 at 171 (Joint Comm. Print 1975) (the "Legislative History"). The Legislative History went on to state that "it should be noted that the criteria set out in this subsection are intended to provide guidance and direction—not airtight standards—for courts to use in determining awards of fees." *Id.*

stand or accept.[6] The government sought first to protect an allegedly infringing manufacturer. Next the government thought it had an obligation to clear its release of information and product samples with the alleged accomplice to the counterfeit scheme before it released the available FOIA Material to the Plaintiff. To make matters worse, the government destroyed the counterfeit goods before Plaintiff had a chance to examine the contraband. Plaintiff, a U.S. corporation, was a victim in this case, and should have received better treatment from its government. Where a government agency has acted as it did in this case and through private sector action has been made aware of its missteps, it would be expected that the agency would make prospective changes in its operations to prevent a recurrence of the conduct. If this is not a public benefit then it would be difficult to discern what would meet that definition.

### 2. "The commercial benefit to the plaintiff" and "the nature of plaintiff's interest in the records"

The second and third parts of the test focus on the "commercial benefit" to the plaintiff and the "plaintiff's interest." These two factors are "closely related" and often considered together. *Tax Analysts*, 965 F.2d at 1095.

■ The government argues that when a plaintiff has a private commercial incentive to litigate its FOIA request, the taxpayers should not be forced to subsidize this commercial interest by paying the FOIA litigant's attorney fees and costs. It certainly appears true that obtaining the FOIA Material would be beneficial to plaintiff in pursuing a putative trademark infringement case against K–Mart and Trading KM S.A. de C.V. of Mexico. However, as stated above, the mere fact that the information sought might be of benefit to Plaintiff in pursuing such a case does not diminish the substantial public benefit that may have resulted. Plaintiff's aggressive attempt to enforce the trade-

mark laws should go a long way to encourage others in the private sector to do likewise. Without private enforcement of our trademark laws, they would become a dead letter.

The government's arguments do suggest a basis for diminishing the size of Plaintiff's award, as discussed below. When a case presents both a public and private benefit, a diminished award of attorney fees and costs may well be appropriate.

### 3. "The reasonableness of the agency's withholding"

The final part of the test on entitlement to attorney fees and costs concerns whether the agency had a reasonable basis in law for concluding that the information was exempt. *Fenster v. Brown*, 617 F.2d 740, 744 (D.C.Cir.1979). "What is required is a showing that the government had a reasonable basis in law for concluding that the information in issue was exempt and that it had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Fenster v. Brown*, 617 F.2d 740, 743 (D.C.Cir.1979). The government argues that its withholding the FOIA Material initially as a "trade secret" under 5 U.S.C. § 552(b)(4) was reasonable since there was no case law that would contradict such a position.

■ The reason there may be no contrary case law is because the position is so devoid of any merit there is no need for the case law to have developed a precedent in this area. Sometimes lawyers forget that there need not be so-called legal precedent in every aspect of a citizen's life. It can hardly be imagined what would happen to the nation's ability to function if a citizen could not act without prior consultation with a lawyer. While lawyers would welcome such a concept, this nation would be immobilized.

■ Simply put, this Court cannot find that the protection of the commercial interests of an alleged counterfeiter is a reasonable position. It goes without saying that if the USCS is charged with the responsibility

---

**6.** Of course, the government agents would be able to approach an alleged accomplice to a counterfeiting scheme as part of the government's investigation into wrongdoing. This is

not the case here. The record does not disclose that the USCS' officials were acting in furtherance of the agency's law enforcement responsibilities.

for seizing counterfeit goods it should cooperate with the wronged trademark owner to the full extent permitted by law. The USCS was required by statute to advise Plaintiff of a counterfeit shipment and to provide it all relevant information. It was unreasonable for the USCS to withhold the information for two years and then not to produce all relevant data until Plaintiff commenced its lawsuit. To later destroy the materials only adds insult to injury.

In sum, this Court finds that Plaintiff has "substantially prevailed" and is eligible for fees and costs in this matter.

## II. The Amount of Plaintiff's Award for Fees and Costs

Plaintiff has applied to the Court for attorney fees at $44,843.00 and costs at $11,034.69. It is Plaintiff's view that it should be awarded the entire amount of its request. Plaintiff states its fees and costs request represents a discount from its normal billing rates and excludes hours that were expensive, redundant or unnecessary.[7]

■ Under the law Plaintiff can only obtain compensation for its litigation costs. It can receive nothing for its preliminary expenditures.

The government does not view the amount of Plaintiff's request to be reasonable. It argues that Plaintiff should not be compensated for work on issues such as its pursuit of an advisory opinion from this Court when it "ultimately did not prevail," nor should Plaintiff be compensated for "non-productive time." *Weisberg v. Department of Justice*, 745 F.2d 1476, 1499 (D.C.Cir.1984). The government also challenges Plaintiff's claimed entitlement to 322 hours of work by three attorneys in this matter, as well as the hourly billing rates of the attorneys. At most, the government argues, Plaintiff is entitled to an award of about $22,000 in attorney fees and costs.

■ The Court finds that Plaintiff's billing rate and the number of hours spent on this matter were not excessive. The charges were well within the normal billing rates of the partners involved in this matter, and the hourly billing rate for the associate who spent the most time on this matter was reduced from $200 to $100. Plaintiff acted reasonably and did not attempt to gouge the government.

■ That having been said, the Court believes that Plaintiff had mixed public and private reasons for pursuing this action and that fact must be taken into consideration. While it is difficult to assess the public versus the private benefit present in this case, a reduction of 40% would properly reflect the costs that should be attributable to Plaintiff's private benefit. Since Plaintiff is precluded from bringing a winnable trademark infringement case due to the actions of the government in this matter (i.e. the destruction of the counterfeit materials), the public benefit should be viewed as greater than the private benefit. Because there is now the likelihood the government will change its procedures to better assist the private sector in enforcing this nation's trademark laws, the court believes that 60% of the fees and costs would be a fair value to attribute to the public benefit aspect of the case.

Applying this formula, Plaintiff will be awarded $26,905.80 in attorney fees and $6,620.81 in costs.

## CONCLUSION

Plaintiff has demonstrated that it has "substantially prevailed" in this matter and is entitled to be awarded attorney fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E). Because this matter involves both a "public benefit" and an advancement of Plaintiff's private interest, Plaintiff will receive an award of 60% of its application for fees and costs, or $26,905.80 and $6,620.81.

---

7. In particular, Plaintiff notes that its fee request reflects a reduction of the billing rate for the associate who spent the most time on the case from $200 to $100 per hour. Plaintiff also seeks only fees and costs related only to the litigation and not the administrative predicate, and has not requested fees and costs in connection with this fee application although it is entitled to do so under *Laffey v. Northwest Airlines*, 746 F.2d 4, 29 (D.C.Cir.1984).