Gene Ellis WILLIAMS, Plaintiff,

v.

**FEDERAL BUREAU OF INVESTIGATION,**
Defendant.

No. Civ.A. 91–1054–LFO.

United States District Court,
District of Columbia.

Nov. 26, 1997.

Gene Ellis Williams, Springfield Medical Center for Federal Prisons, Springfield, MO, Elaine Joan Mittleman, Falls Church, VA, for Plaintiff.

Patricia Daniells Carter, Keith V. Morgan, U.S. Atty's Office, Washington, DC, for Defendant.

## MEMORANDUM AND ORDER

OBERDORFER, District Judge.

An April 16, 1997 Order denied plaintiff's motion for reconsideration, effectively ending the substantive litigation of his lawsuit under the Freedom of Information Act (FOIA). *See* 5 U.S.C. § 552 (1994). Currently pending is plaintiff's Motion for Attorneys' Fees. For the reasons stated below, it will be granted.

### I.

■ FOIA authorizes "reasonable attorney fees and other litigation costs reasonably incurred in any case ... in which complainant has substantially prevailed." *Id.* § 552(a)(4)(E). Although defendant Federal Bureau of Investigations (FBI) contests this point, plaintiff has substantially prevailed in this lawsuit. He brought this action to compel the production of two documents, identified as Documents B and G, that the FBI had withheld in their entirety. Following an initial ruling by this Court and an appeal, the government reviewed Document G and "determined that a supplemental release to the plaintiff is appropriate." Bordley Aff., at ¶ 6. While the FBI ultimately released Document G on its own accord, "the lawsuit did in fact cause the release of the data by deploying the power of the court to encourage [a] reluctant agenc[y]to waive [its] ... interests." *Chesapeake Bay Found., Inc. v. United States Dep't of Agriculture,* 11 F.3d 211, 216 (D.C.Cir.1993). It is well settled law in this Circuit that a plaintiff may substantially prevail in a FOIA case short of a court order or judgment compelling the release of information. *See id.; Cuneo v. Rumsfeld,* 553 F.2d 1360, 1365 (D.C.Cir.1977).

■ The litigation over Document B ensued for a much longer period, but reached a similar resolution. On March 8, 1996, after five years of litigation, the FBI was ordered to release Document B in redacted form. The FBI's argument, that "this litigation did not result in the release of any information to the plaintiff," is clearly unavailing. Def.'s Opp. to Pl.'s Mot. Attn'y's Fees, at 4. Although the Court ultimately "redacted the information that defendant contended was exempt from disclosure under the FOIA," *id.,* the FBI also released portions of Document B that were previously unavailable to plaintiff, consistent with FOIA's dictate that "[a]ny reasonably segregable portion of a record shall be provided ... after deletion of the portions which are exempt...." 5 U.S.C. § 552(b). Consequently, the filing of plaintiff's suit "(1) [was] reasonably necessary and (2) ... substantially caused the requested records to be released." *Chesapeake Bay Found.,* 11 F.3d at 216.

### II.

■ In addition to the threshold judgment that plaintiff "substantially prevailed," [t]here are at least four considerations to be weighed by the court in determining whether an *eligible* FOIA litigant is also *entitled* to attorney's fees: (1) the public

benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the Government had a reasonable basis for withholding requested information.

*Id.* These factors, while not stated in the text of the FOIA attorneys' fees provision, are well rooted in its legislative history. As our Court of Appeals has emphasized since its earliest cases interpreting this provision, it is only congressional intent that can override the American presumption against the award of attorneys' for prevailing parties. *See Cuneo,* 553 F.2d at 1363–64; *Nationwide Bldg. Maintenance, Inc. v. Sampson,* 559 F.2d 704, 709 (D.C.Cir.1977); *see also Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (reaffirming "American Rule" against shifting attorneys' fees liability to losing party absent congressional policy to contrary).

Congress introduced FOIA's attorneys' fees provision, along with other innovations, only after it witnessed recalcitrance by government agencies in complying with the dictates of the Act. As our Court of Appeals noted, "Extensive oversight hearings held in 1971 and 1972 brought to light substantial 'foot-dragging' on the part of administrative officials who invoked every conceivable delaying technique and forced citizens requesting information under the FOIA to resort to expensive litigation for vindication of their statutory rights." *Sampson,* 559 F.2d at 710. While multiple FOIA amendments wound their way through the 93rd Congress, Senator Edward Kennedy introduced a Senate bill, explicitly directing the trial court to consider the four factors enumerated above "[i]n exercising its discretion" to award attorneys' fees. S.2543, 93d Cong. (1974), *reprinted in* 120 *Cong.Rec.* 17014 (1974). The final version of the act, *see* Amendments to the Freedom of Information Act, Pub.L. No. 93–502, 88 Stat. 1561 (1974), removed the four factors from the text, but Congress was clear that it did "not intend ... to preclude the courts, in exercising their discretion as to awarding such fees, to take into consideration such criteria." H.R.Rep. No. 93–1380, at 10 (1975).

Consequently, our Court of Appeals has always turned to these (and other) criteria in evaluating the exercise of a trial court's discretion to grant or deny and motion for attorneys' fees to a prevailing plaintiff. *See Cuneo,* 553 F.2d at 1365; *Sampson,* 559 F.2d at 714. Yet, courts "must be careful not to give any particular factor dispositive weight." *Id.* indeed, Congress was clear that the four enumerated criteria were "intended to provide guidance and direction—not airtight standards...." S.Rep. No. 93–854, at 19 (1974). They were intentionally removed from the text of FOIA for fear that they "may be too delimiting...." H.R.Rep. No. 93–1380, at 10. The application of FOIA's attorneys' fees provision remains vested in the sound discretion of the district court.

### A.

Under the first criterion articulated by Congress—the benefit to the public derived from litigation of this case—plaintiff does not underscore a public interest that correlates to "the specific documents at issue in the case at hand," as required by the Court of Appeals. *Cotton v. Heyman,* 63 F.3d 1115, 1120 (D.C.Cir.1995). In this case, Mr. Williams sought FBI records that pertained to his arrest for narcotics trafficking in Charlotte, North Carolina, seemingly for the purpose of challenging his arrest on constitutional grounds. *See* Pl.'s Mot. Attn'y's Fees, at 4. While of great interest to himself, these specific documents are of little interest to the general public. *See Cotton,* 63 F.3d at 1120 (finding that documents sought to facilitate employment discrimination suit did not "contribute to the public's ability to make vital political choices"); *Republic of New Afrika v. FBI,* 645 F.Supp. 117, 121 (D.D.C.1986) (holding that FOIA request to exonerate prosecuted individuals is "[p]urely personal FOIA request[ ] ... of no interest to anyone but the plaintiff"). On its own, however, this factor is not dispositive.

### B.

The second and third factors—the commercial benefit to the plaintiff and the nature of the plaintiff's interest in the records—are "closely related and often considered togeth-

er." *Cotton*, 63 F.3d at 1120 (quoting *Tax Analysts v. United States Dep't of Justice*, 965 F.2d 1092, 1095 (D.C.Cir.1992)). While plaintiff was motivated by a distinctly personal interest in the documents he sought, his status as a lone litigant, who was seeking to vindicate his constitutional rights and filing his complaint *pro se*, fits well within the scope of the second criteria for awarding attorneys' fees. As Senator Strom Thurmond stated at hearings on the 1974 FOIA amendments, "We must insure that the average citizen can take advantage of the law to the same extent as the giant corporations with large legal staffs. . . . Under the second criterion a court would usually allow recovery of fees where the complainant was indigent . . . but would not if it was a large corporate interest. . . ." S.Rep. No. 93–854, at 18–19 (quoting 1 *Hearings on Executive Privilege, Secrecy in Government and Freedom of Information Before the Subcomm. On Intergovernmental Relations of the Senate Comm. on Government Operations and the Subcomm. on Administrative Practice and Procedure of the Senate Comm. on the Judiciary*, 93d Cong., at 174 (1973)).

Under the third factor, like the first, plaintiff does not suggest an interest in FBI documents that affords an immediate or direct benefit to the public at large. Even if Williams's own interest in the records is personal, however, his attorney raises a concern parallel to the third criterion that warrants consideration. In her motion, she makes the novel legal argument that an award of fees would serve the larger public purpose of encouraging service on the Civil Pro Bono Counsel Panel. She notes that she has dutifully served her client in this case for seven years without renumeration. To deny her motion would discourage other attorneys from making a similar commitment. This argument is persuasive, and consistent with the legislative history of subsection (a)(4)(E). *See, e.g.*, S.Rep. No. 93–854, at 17 ("Too often the barriers presented by court costs and attorneys' fees are insumountable [sic] for the average person requesting information, allowing the government to escape compliance with the law."); *cf. United States v. $12,248 U .S. Currency*, 957 F.2d 1513, 1520 (9th Cir.1991) (granting attorneys' fees under Equal Access to Justice Act to pro bono lawyer to ensure that litigants have legal representation).

### C.

The fourth factor, whether the government's withholding of the requested information had a reasonable basis in law, tips the balance in plaintiff's favor. Consistent with the origins of the attorneys' fees provision, this criterion is designed to discourage "obdurate behavior" in the face of clear governmental mandates under FOIA. S.Rep. No. 93–854, at 19 (quoting Thurmond). Where, as here, the government has frustrated the policy of open government embodied in the Act and necessitated years of costly litigation, plaintiffs need and deserve adequate incentive to pursue their cause in court.

The bulk of this seven year litigative effort has focused on one three-page document withheld by defendant. Although defendant claims the mantle of victor because the document was never released in full, *see* Def.'s Opp. to Pl.'s Mot. Attn'y's Fees, at 4, it would have avoided years of needless litigation if it had simply complied with FOIA's segregability requirement and released discoverable portions of the document. *See* 5 U.S.C. § 552(b). Defendant argues that the Supreme Court's decision in *United States Department of Justice v. Landano*, 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993) two years into the litigation caused much of the delay in this case. However, beginning in 1991 and resuming in February 1994, defendant relied exclusively on FOIA exemption 7(D) to withhold the document although its rationale mirrored exemption 7(E). *See* Mem. of Apr. 16, 1997, at 2; *see also* 5 U.S.C. § 552(b)(7)(D), (b)(7)(E). This is the kind of "recalcitran[ce]" referred to in *Tax Analysts*, 965 F.2d at 1097 (quoting *Cuneo*, 553 F.2d at 1364), and it requires defendant to bear responsibility for plaintiff's attorneys' fees.

### III.

Exercising the judicial discretion afforded by Congress, the balance of factors and equities in this case warrants an award of attorneys' fees for plaintiff's counsel. According-

ly, it is this 26th day of November 1997 hereby

ORDERED: that plaintiff's Motion for Attorney's Fees is GRANTED.