**Harry C. PIPER, III, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, et al., Defendants.**

**Civ.A. No. 98–1161 RCL.**

United States District Court, District of Columbia.

July 29, 2004.

---

Daniel S. Alcorn, Falls Church, VA, for plaintiff.

Beverly M. Russell, Charlene Denise Bey–Proctor, Michael C. Johnson, U.S. Attorney's Office, Washington, DC, for defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.·

This matter comes before the Court on plaintiff's motion for an award of reasonable attorney's fees and costs. Upon consideration of the motion, the opposition thereto, plaintiff's reply, and the record in this case, plaintiff's motion will be granted.

## I. BACKGROUND

The factual background of this case is laid out in detail in the Court's Memorandum Opinion of December 1, 2003. A synopsis of that background was subsequently laid out in the Court's disposition of defendants' motion to reconsider. A review of the case's pertinent facts in relation to plaintiff's motion for attorney's fees, however, is in order.

Plaintiff filed suit under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, on May 8, 1998 regarding the 1972 kidnapping of his mother, Virginia Lewis Piper, and subsequent FBI investigation and DOJ prosecution. The Government filed a motion for a four year *Open America* stay on July 22, 1998. On March 26, 1999, this Court reduced the Government's four year *Open America* stay to two years. When the stay period expired, the Court ordered the FBI to process and release requested documents to plaintiff. Since that time, the FBI has released approximately 80,000 pages of documents to plaintiff in response to his request.

On December 1, 2003, this Court granted in part the Government's motion for summary judgment regarding the adequacy of the FBI's search and its application of FOIA Exemptions 7(D)(E) and (C). The Court granted in part plaintiff's motion for summary judgment concerning documents 206 and 309, and ordered them released to plaintiff because they were withheld improperly. The Court also

granted plaintiff's motion with respect to documents 129, 130, 131, 132, 172, 312, 321, 322, 323, 324, 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 337, 339, and 340, because the Government failed to justify the withholding of these documents under the asserted exemptions. On March 26, 2004, the Court reaffirmed its ruling concerning the above-mentioned documents by denying the Government's motion for reconsideration.

In light of the case's disposition, plaintiff filed this motion for an award of attorney's fees. Plaintiff seeks fees because of the Court's reduction of the Government's *Open America* stay from four years to two years and the Court's partial granting of plaintiff's motion for summary judgment in its December 1, 2003 Memorandum Opinion and Order.

## II. ANALYSIS

■ Plaintiff requests attorney's fees pursuant to 5 U.S.C. § 552(a)(4)(E) of the Freedom of Information Act. FOIA provides that the district court, in its discretion, may "assess against the United States reasonable attorney's fees and other litigation costs reasonably incurred in any case ... in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). Determining whether an award of attorney's fees is appropriate under the fee-shifting provision of FOIA requires an inquiry into two related but separate issues: (1) Is plaintiff eligible for an award of attorney's fee? (2) If plaintiff is eligible for attorney's fees, is plaintiff entitled to such fees? *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 709, 711 (D.C.Cir.1977).

### A. Plaintiff is Eligible for Attorney's Fees

■ In order to be eligible for attorney's fees, a FOIA plaintiff must have "substantially prevailed" in his law suit against the withholding agency. 5 U.S.C. § 552(a)(4)(E). The meaning of the phrase "substantially prevailed" has been dramatically changed by the Supreme Court's decision in *Buckhannon Bd. & Care Home Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). The *Buckhannon* Court rejected the prior "catalyst theory" for awarding attorney's fees. The Court held instead that there must be a "judicially sanctioned change in the legal relationship of the parties" for the plaintiff to be awarded attorney's fees as a prevailing party. *Id.* at 605, 121 S.Ct. 1835. Borrowing from *Black's Law Dictionary*, the Court stated that a prevailing party "is one who has been awarded some relief by the court." *Id.* at 603, 121 S.Ct. 1835. The Court noted two particular forms of relief that designate a party as the prevailing one. First, the Court stated that a plaintiff must "receive at least some relief on the merits of his claim before he can be said to prevail." *Id.* at 604, 121 S.Ct. 1835 (quoting *Hewitt v. Helms*, 482 U.S. 755, 760, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987)). Under this test, even an award of nominal damages is sufficient. *Id.* (citing *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)). Second, the Court noted that a settlement agreement enforced through a consent decree could serve as the basis for an attorney's fee award. *Id.* (citing *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980)). A consent decree provides the predicate change in the legal relationship between the parties sufficient to trigger a possible award of attorney's fees. *Id.* (citing *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)).

■ In *Oil, Chem. & Atomic Workers Int'l Union v. Dep't of Energy*, the D.C. Circuit applied the *Buckhannon* holding to

FOIA litigation. 288 F.3d 452 (D.C.Cir. 2002). The D.C. Circuit held "that in order for plaintiffs in FOIA actions to become eligible for an award of attorney's fees, they must have been awarded some relief by a court, either in a judgment on the merits or in a court-ordered consent decree."[1] Id. at 456–57 (citing Buckhannon, 532 U.S. at 603, 121 S.Ct. 1835) (internal quotation marks omitted).

### 1. Open America Stay & Document Production

■ This case presents the novel issue of how to characterize the Court's reduction of the Government's Open America[2] stay request from four years to two years. Plaintiff argues that the Court's cutting of the Government's request from four years to two years coupled with the FBI's obligation to timely process and release records to plaintiff upon expiration of the two year stay constitutes judicial relief on the merits of his claim. (Pl.'s Mot. for Attorney's Fees at 4–5.) The Government, in contrast, argues that the Court's ruling in this matter was not a decision on the merits but instead a decision on timing. (Defs.' Opp'n to Pl.'s Mot. at 5–7.) The subsequent release of 80,000 documents to plaintiff was neither a result of a judgment on the merits nor a consent decree, but rather it was the result of administrative processing. (Defs.' Opp'n to Pl.'s Mot. at 6–7.) The reduction of the request from four years to two years presents the crux of the legal issue.

There is authority to aid the Court in answering this question. In Oil, Chem. & Atomic Workers, the D.C. Circuit analyzed whether a stipulation and order by the district court constituted judicial relief on the merits sufficient to designate plaintiff a prevailing party. The district court directed the Energy Department to complete its review of documents requested by the Oil, Chemical, and Atomic Workers International Union within sixty days. The parties eventually agreed to dismiss the case and essentially worked out a private settlement agreement subject to court approval. Judge Randolph, writing for the majority, viewed the stipulation and order as an interim order and procedural ruling that could not serve as the basis for a determination that the union prevailed. Oil, Chem. & Atomic Workers, 288 F.3d at 458–59. The court reasoned that "[t]he only part of the order which arguably changed the legal status of the parties was the requirement that the Energy Department complete its record review in 60 days." Id. at 458. Because the Energy Department had no obligation to turn over any documents neither before nor after the date of the stipulation and order, the D.C. Circuit held that the interim order did not qualify as judicial relief on the merits. Id. at 458–59. The facts of this case are readily distinguishable from Oil, Chem. & Atomic Workers.

Unlike the sixty day interim order at issue in Oil, Chem. & Atomic Workers, the

---

1. With respect to the varying language used in other fee-shifting statutes, the D.C. Circuit announced that FOIA's language of "substantially prevailed" is the functional equivalent of the "prevailing party" language found in other statutes. Oil, Chem. & Atomic Workers Int'l Union, 288 F.3d at 455–56 (citing Foster v. Boorstin, 561 F.2d 340, 342 (D.C.Cir. 1977)). Thus, the modifier "substantially" should not be read to limit the category of "prevailing parties." Id. at 455.

2. FOIA provides that agencies may be permitted time to process requests beyond that allotted by statute if the agency can show that "exceptional circumstances exist." 5 U.S.C. § 552(a)(6)(C)(i). In Open America v. Watergate Special Prosecution Force, the D.C. Circuit announced what constitutes "exceptional circumstances" and the standard courts are to use in deciding whether to allow an agency to go beyond the time allotted by FOIA. 547 F.2d 605, 616 (D.C.Cir.1976).

order in this case reducing the FBI's *Open America* stay request from four years to two years required the FBI to release the requested records within two years. The FBI had an obligation to produce the requested documents upon expiration of the *Open America* stay, whereas the denial of the district court's sixty day interim order in *Oil, Chem. & Atomic Workers* as judicial relief turned on the fact that Energy Department had no obligation to turn over any documents when the interim order expired. *See Oil, Chem. & Atomic Workers*, 288 F.3d at 458–59. This Court's order reducing the FBI's stay request from four-years to two years, therefore, constitutes "at least some relief on the merits" of plaintiff's claim sufficient to find him the prevailing party consistent with the law of this Circuit. *Buckhannon Bd. & Care Home Inc.*, 532 U.S. at 604, 121 S.Ct. 1835 (internal citation omitted); *cf. Oil, Chem. & Atomic Workers*, 288 F.3d at 458–59.

Additionally, whether plaintiff received the requested documents within four years or two years, in real world terms, substantially changed the parties' legal status because a two year stay reduction determines when and, to a large extent, how long the litigation will proceed. The stay reduction had the effect of making the Government confront plaintiff's challenges to the various FOIA disclosure exceptions the FBI invoked two years earlier than it thought it should be required to do. The D.C. Circuit recently provided further guidance on this point in *Role Models America, Inc. v. Brownlee*, 353 F.3d 962 (D.C.Cir.2004).

In *Role Models*, a case dealing with the recovery of attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, plaintiffs applied for a preliminary injunction to prevent the Secretary of the Army from transferring a closed military installation because the Secretary failed to observe the proper procedural requirements for disposing of closed military facilities. The D.C. Circuit ordered the district court to enter a permanent injunction against conveyance of the military installation until the Secretary remedied the procedural error he committed. *Id.* at 965 (internal citation omitted). In finding the plaintiff a prevailing party, the court of appeals stated that the plaintiff obtained the sort of "change in someone's primary conduct in the real world[ ] . . . [such as by the] imposition of a restriction on others" that makes a party a prevailing one. *Id.* at 966 (internal citations and quotation marks omitted). The court's logic is applicable here. By requiring the FBI to produce the requested documents within two years rather than four years, the plaintiff obtained a "change [in the FBI's] primary conduct in . . . real world [terms]. . . ." *Id.* Therefore, when this Court reduced the stay by two years, it was indeed granting plaintiff "some relief." *Buckhannon Bd. & Care Home Inc.*, 532 U.S. at 603, 121 S.Ct. 1835. As a result, this Court rejects the Government's characterization of the two year *Open America* stay and subsequent release of documents as a mere timing decision and administrative proceeding.[3]

## 2. Partial Granting of Plaintiff Cross–Motion for Summary Judgment

■ Plaintiff also argues that he is eligible for attorney's fees because the Court

---

**3.** The Government cites *Bricker v. FBI* for the proposition that a plaintiff must make a showing of improper conduct or purpose before awarding attorney's fees against an agency based solely on delay. 54 F.Supp.2d 1, 4 (D.D.C.1999). The *Bricker* case, however, was decided prior to both the Supreme Court's decision in *Buckhannon* and the D.C. Circuit's decisions in both *Oil, Chem. & Atomic Workers* and *Role Models*. These three cases are controlling here. Thus, the Government's reliance on *Bricker* is misplaced.

partially granted his cross-motion for summary judgment regarding documents 206, 309, 129, 130, 131, 132, 172, 312, 321, 322, 323, 324, 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 337, 339, and 340. (Pl.'s Mot. for Attorney's Fees at 2, 4.) The Government argues that these documents are insignificant in comparison to the 80,000 documents released to plaintiff, and plaintiff therefore should not be considered a prevailing party. (Defs.' Opp'n to Pl.'s Mot. at 4–5.) The Government's argument fails because it is not the nature of the documents that controls. It is the nature of the judicial relief that is dispositive.

The documents released to plaintiff were initially withheld by the Government under various FOIA exceptions. Indeed, with respect to documents 129, 130, 131, 132, 172, 312, 321, 322, 323, 324, 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 337, 339, and 340, the Government requested this Court to reconsider its ruling, a request the Court denied.[4] There is no dispute that the FBI would not have released any of the documents had it not been for the Court's granting of partial relief to plaintiff. Hence, the Government released the documents pursuant to a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon Bd. & Care Home Inc.*, 532 U.S. at 605, 121 S.Ct. 1835. This is all that is required for plaintiff to be considered a prevailing party. Considering the Court's reduction of the FBI's *Open America* stay request from four years to two years, its ruling ordering the process and release of requested documents upon the stay's expiration, and its partial granting of plaintiff's summary judgment motion, the Court finds that the plaintiff substantially prevailed in this ac-

tion and is eligible for an award of attorney's fees under 5 U.S.C. § 552(a)(4)(E).

## C. Plaintiff is Entitled to Attorney's Fees

■ Once a court determines plaintiff is eligible for attorney's fees under FOIA, it should then determine whether the plaintiff is entitled to such fees. When determining whether a substantially prevailing FOIA plaintiff is entitled to attorney's fees, the courts consider: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the Government had a reasonable basis for withholding requested information. *Nationwide Bldg. Maint.*, 559 F.2d at 711. None of these factors are dispositive. As another judge in this district stated: "The application of FOIA's attorney's fees provision remains vested in the sound discretion of the district court." *Williams v. FBI*, 17 F.Supp.2d 6, 8 (D.D.C.1997) (Oberdorfer, J.).

### 1. Public Benefit

■ The public benefit factor is generally satisfied if plaintiff's victory is likely to add to the public fund of information that citizens may use in making vital political choices. *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C.Cir.1995). Plaintiff cites this Court's December 1, 2003 Memorandum Opinion where the Court found that release of documents 209 and 309 added to the public interest by airing out possible evidence of Government misconduct relating to evidence tampering in a criminal trial. (Pl.'s Mot. for Attorney's Fees at 5–6.) The Court's finding in this matter has

---

4. The Government neither challenged nor asked the Court to reconsider its ruling regarding documents 206 and 309. If the Government found the twenty-three other afore-mentioned documents were "only a handful of insignificant documents," it is unlikely it would have filed a motion for reconsideration with the Court.

not changed.[5] The FBI is a vital part of this nation's law enforcement structure and continues to be so. Allegations and evidence of possible misconduct by this national institution is relevant to the public's information fund. Disclosure of this information will assist the citizenry in making informed judgments and opinions about the FBI and how it is operating. While the impact on the public of releasing this information is not quantifiable, the Court nevertheless finds that it adds to the public's fund of knowledge. *Cf. Northwest Coalition for Alternatives to Pesticides v. Browner,* 965 F.Supp. 59, 63–64 (D.D.C. 1997) (releasing information about certain chemical agents in pesticides adds to the public information fund, notwithstanding the inability to discern the impact on the public regarding its release). This factor therefore weighs in favor of plaintiff.

## 2. Commercial Benefit & Nature of Plaintiff's Interest in the Records

Although listed as separate factors, the commercial benefit to plaintiff from FOIA disclosure and the nature of plaintiff's interest in disclosure are closely related and often considered together. *See Cotton,* 63 F.3d at 1120. Plaintiff argues that as an author and writer, who intends to write a book about his mother's kidnapping and resulting government investigation and prosecution, he is favored for an award of attorney's fees under FOIA. (Pl.'s Mot. for Attorney's Fees at 6–8.) That he is member of the family victimized by the kidnapping should not weigh against him regarding his request for attorney's fees. (Pl.'s Reply to Defs.' Opp'n at 5.) The Government argues that plaintiff's plan to write a book is speculative and rejects plaintiff's assertions that he is a serious writer by stating plaintiff provided no evidence that he is an author of significant work of nonfiction or biography. (Defs.' Opp'n to Pl.'s Mot. at 8.) The Court agrees that plaintiff's status as Virginia Piper's son should not act as an obstacle against him for purposes of awarding attorney's fees.

There is little doubt that plaintiff is motivated by a distinct personal interest in the documents he is seeking. After all, the disclosures all relate to the kidnapping of plaintiff Piper's own mother, the event that informs and permeates each document. This factor could then weigh against plaintiff in isolation. But the notion that a private interest and public interest "must be mutually exclusive is not supportable." *Playboy Enters., Inc. v. U.S. Customs Serv.,* 959 F.Supp. 11, 16 (D.D.C.1997). Often times, "[s]uch benefits [and interests] are . . . not so easily

---

5. The Government also cites the Court's December 1, 2003 Memorandum Opinion to show support for its position. (Defs.' Opp'n to Pl.'s Mot. at 7.) The Government only quoted the Court in part; the partially quoted language does not appreciate the relevance or context of the Court's statement. The December 1 Opinion stated in pertinent part:

> The interest in the details of this case, and plaintiff's subsequent research into it, would conceivably be an interesting new story; indeed, plaintiff has included with his opposition memorandum a few local news articles profiling his efforts to that end. (Pl.'s Ex. C.) But whether or not FBI documents related to the investigation of

> Virginia Piper's kidnapping are newsworthy is not in itself the kind of public interest FOIA seeks to serve.

*Piper v. DOJ,* 294 F.Supp.2d 16, 24 (D.D.C. 2003) (citing *DOJ v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 774, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989)). The relevance of the cited language the Government utilizes to support its argument speaks to the Court's categorical finding that much of the Government's withholdings under Exemption 7(C) were proper. That finding has no bearing on whether what the Court did order released to plaintiff warrants a granting of attorney's fees.

separable, and in this case we have both." *Id.* Here, plaintiff intends to write a book about his mother's kidnapping and the FBI investigation into it and resulting DOJ criminal prosecution. This scholarly endeavor further contributes to the public fund of knowledge by synthesizing the voluminous documents released to plaintiff—coupled with his own first hand knowledge of the incident and other research efforts—into a narrative and finished work of nonfiction. The fact that plaintiff will benefit commercially from potential sales of this book is not sufficient to tip the scale in favor of characterizing plaintiff solely as a commercial requester. As the D.C. Circuit noted, "Congress did not intend for scholars (or journalists and public interest groups) to forego compensation when acting within the scope of their professional roles." *Campbell v. DOJ,* 164 F.3d 20, 35 (D.C.Cir.1998).

As to the Government's argument that plaintiff's claim of writing this book is speculative at best, the Court assumes that plaintiff's unequivocal representations to this Court that he is going to write a book on his mother's kidnapping were made in good faith and he intends to do so. It seems unlikely that plaintiff would continually engage in this litigious battle had he just planned to store these 80,000 documents in a room somewhere and browse through them at his leisure.

The Government also argues that plaintiff has presented no evidence that he is a researcher or scholar of significant work. The Court will not engage in a detailed inquiry of what constitutes an author or scholar of significant work dare it depart its role as administrator of justice and venture into the world of literary critic and commentator. Plaintiff is a law school graduate and earned an MA in English

with a focus on Writing. (Pl.'s Mot. for Attorney's Fees at 7.) His writings have appeared in various Minnesota newspapers and sporting magazines. (Pl.'s Mot. for Attorney's Fees at 7.) These facts, coupled with plaintiff's plan to write a book on his mother's kidnapping, are sufficient for the Court to characterize plaintiff as a writer and not as a commercial requestor as it relates to this FOIA litigation and these documents.[6] Therefore, these two factors considered together weigh in favor of an award of attorney's fees for plaintiff.

### 3. Reasonableness of the Government's Withholding

The final factor considered in the attorney's fees entitlement analysis is whether the government agency had a reasonable basis in law for withholding the requested documents. *Williams,* 17 F.Supp.2d at 9. This factor seeks to discourage obdurate behavior on the part of the government and weed out those cases where the government was recalcitrant in its opposition to plaintiff's FOIA request. *Cuneo v. Rumsfeld,* 553 F.2d 1360, 1366 (D.C.Cir.1977) (internal citation omitted). Under this factor, where the agency's interpretation of its legal right to withhold information is correct as a matter of law, fees should not be awarded. *Cotton,* 63 F.3d at 1117. Where the agency erroneously interprets the law, its withholdings will be considered reasonable if the interpretation has a colorable basis in law. *Id.* at 1121. Plaintiff argues that the Court's ordering of documents 206 and 309 released to plaintiff show the Government's withholdings were unreasonable. (Pl.'s Mot. for Attorney's Fees at 8.) The same is true regarding documents 129, 130, 131, 132, 172, 312, 321, 322, 323, 324, 326, 327,

---

**6.** The finding here is limited to the facts of this case. The Court does not find plaintiff Piper an author, writer, researcher or scholar as a matter of law.

328, 329, 330, 331, 332, 333, 334, 335, 337, 339, and 340. (Pl.'s Mot. for Attorney's Fees at 8.) Given the Court's December 1, 2003 Memorandum Opinion upholding the majority of the FBI's asserted exemptions, the Government asserts that plaintiff's argument is meritless. (Defs.' Opp'n to Pl.'s Mot. at 8.) Plaintiff's position is well taken.

The main factual focus of this inquiry is the reasonableness of the documents that were ordered released. It is true that the Government properly withheld much of the disputed documents in this case. However, turning its attention to documents that were ordered released, the Court finds that the Government acted unreasonably. As the Court noted in its Opinion, the FBI's *Vaughn* index described a photograph of a latent fingerprint taken from a brown piece of paper that was recovered from an automobile. *Piper v. DOJ*, 294 F.Supp.2d 16, 25 (D.D.C.2003). Plaintiff requested a document regarding a smudged fingerprint that was lifted off of a shopping bag in the kidnapper's car. *Id.* Despite this precise description, the Government stated that a responsive document could not be found. *Id.* While the Court reserved judgment in its Memorandum Opinion on whether this contradiction was "blunder or subterfuge,"[7] it now addresses the issue and finds that this incident is the kind of recalcitrant and obdurate conduct that requires the Government to bear responsibility for plaintiff's attorney's fees. *Cuneo*, 553 F.2d at 1366.

The same holds true with respect to the Government's failure to justify the withholding of the twenty-three aforementioned documents. As the Court noted, "[w]ithout justification, the Government has no standing to invoke exemptions. Similarly, the Court cannot ensure a mean-ingful assessment of the withholdings without justification." *Piper*, 294 F.Supp.2d at 31–32. The Court therefore ordered all of these documents released to plaintiff in their entirety. *Id.* at 33. The Court later reaffirmed this ruling when it denied the Government's motion to reconsider because the Government simply raised arguments that should have been made prior to final judgment in this matter. *Piper v. DOJ*, 312 F.Supp.2d 17, 22–3 (D.D.C.2004). This further places this factor on the side of plaintiff. Therefore, in light of the Government's conduct regarding the documents ordered released to plaintiff, the Court finds the "reasonable basis in law" factor weighs in favor of an award of attorney's fees.

**4. Conclusion Regarding Entitlement to Attorney's Fees**

 The Court finds that all of the factors weigh in favor of granting plaintiff an award of attorney's fees. The only factor that can be construed to weigh against plaintiff is his own personal interest in this case. As previously noted, however, that factor in relation to plaintiff's intention to write a book about Virginia Piper's kidnapping still weighs in plaintiff's favor. Exercising the judicial discretion afforded by Congress and soundly guided by the law of this Circuit, the Court finds that the balance of factors in this case warrant an award of attorney's fees for plaintiff.

**D. Calculation of Plaintiff's Award of Reasonable Attorney's Fees**

 A FOIA litigant entitled to attorney's fees may only recover fees and costs incurred in litigation. *Playboy Enters.*, 959 F.Supp. at 18. The reasonableness of a fee request must be evaluated in light of the results obtained. *Riverside v.*

---

**7.** The Court's Memorandum Opinion stated in pertinent part: "Whether this contradiction is blunder or subterfuge, the Court will not in-quire at this time. The Court orders the FBI to release document 206." *Piper*, 294 F.Supp.2d at 25.

*Rivera,* 477 U.S. 561, 572, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). Such fees and costs must be reasonable and should not be awarded for excessive, redundant, or otherwise unnecessary work. *Hensley v. Eckerhart,* 461 U.S. 424, 434–40, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Nor should fees be granted for hours spent on unsuccessful claims that are distinct in all respects from successful claims. *Id.* at 434, 103 S.Ct. 1933. The fee amount is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Browner,* 965 F.Supp. at 65. (citing *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir.1980)).

 Plaintiff requests attorney's fees in the amount of $82,977.50 and costs in the amount of $1,995.37. (Alcom Decl. at 2–3.) Plaintiff's counsel relies on the *Laffey* matrix to calculate attorney's fees as the prevailing market rate for services rendered in this litigation.[8] (Alcom Decl. at 1–2.) The Government has neither lodged an objection regarding plaintiff's application of the *Laffey* matrix nor objected to any of the hours plaintiff's attorney has billed for this litigation. Similarly, the Government has not offered an alternative fee amount. The only opposition filed with the Court is the Government's opposition to plaintiff's motion for attorney's fees, which is a general opposition motion to plaintiff's request. It is well-established that "the burden falls on the Government to go forward with evidence that [plaintiff's attorney's fee application and] rate [are both] erroneous." *Nat'l Ass'n of Concerned Veterans v. Sec. of Defense,* 675

F.2d 1319, 1326 (D.C.Cir.1982). When the Government seeks to rebut a rate or calculation or hours billed, it must provide—just as plaintiff must provide specific evidence in his application for attorney's fees—"equally specific countervailing evidence." *See id.* The Government has not done so here. As a result, the Court could simply award plaintiff the entire amount of requested attorney's fees and costs. The Court, however, does not deem that course of action appropriate considering the facts of this case.

 As a threshold matter, the Court finds that plaintiff's billing rate and number of hours spent on this matter were not excessive. Plaintiff acted reasonably and "did not attempt to gouge the government." *Playboy Enters.,* 959 F.Supp. at 18. With that said, however, the Court finds that while plaintiff substantially prevailed in this action, plaintiff raised several claims that failed. The Court found that the FBI properly applied Exemptions 7(D) and (E) and partially granted the Government's motion for summary judgment accordingly.[9] The Court also granted the Government's summary judgment motion regarding the adequacy of the FBI's search for documents in this case. Plaintiff's claims on these issues were ultimately unsuccessful and thus fees should not be granted for time spent on them. Because plaintiff failed in part and prevailed in part on his summary judgment cross-motion and reply to the Government's summary judgment motion, the Court will reduce attorney's fees incurred while working on those motions by 50%. *See Read v. Fed.*

---

8. The *Laffey* matrix is a schedule of charges based upon years of experience and a compilation of prevailing market rates. The U.S. Attorney's Office updates the schedule annually using the Consumer Price Index. *Browner,* 965 F.Supp. at 65 n. 4 (citing *Laffey v. Northwest Airlines, Inc.,* 746 F.2d 4 (D.C.Cir. 1984)).

9. The Court intentionally left out the Exemption 7(C) claim because both plaintiff and the Government partially succeeded on this claim. Thus, this challenge was not an unsuccessful claim for plaintiff distinct from his successful claim in this matter. *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933.

*Aviation Admin.*, 252 F.Supp.2d 1108, 1112–113 (W.D.Wash.2003) (reducing the award of reasonable attorney's fees in a FOIA case because both plaintiff and defendant prevailed in part and failed in part). This reduction also takes into account plaintiff's manifest private interest in this case. *Playboy Enters.*, 959 F.Supp. at 18 (reducing the award of reasonable attorney's fees and cost because plaintiff had "mixed public and private reasons for pursuing this action[ ]").

Having reduced the attorney's fees as described above, the Court finds that plaintiff's attorney's fees incurred from May 14, 2003 through June 16, 2003 are to be cut in half. The hours spent on this case during those days total 45.3. The same treatment applies to work done from August 1, 2003 through August 14, 2003.[10] The hours spent on this case during those days total 23.4. Thus, the hours from these two periods total 68.7. Utilizing the *Laffey* Matrix plaintiff provided and matching plaintiff's counsel's years of experience with the hours billed, the total dollar amount equals $21,640.50. Cutting this number by 50%, the Court finds that plaintiff is entitled to $10,820.25 for the hours billed during the aforementioned dates. Deducting $10,820.25 from $82,977.50 leaves plaintiff's award for attorney's fees at $72,157.25. Plaintiff's reasonable costs totaling $1,995.37 remain intact. Therefore, plaintiff will be awarded $72,157.25 in attorney's fees and $1,955.37 in costs.

## III. CONCLUSION

The plaintiff, Harry C. Piper, III is a published writer and author who is researching to write a book on the subject of his mother's kidnapping. The prosecution of alleged perpetrators of the kidnapping

ultimately resulted in acquittal of the defendants, and thus no person has been convicted and sentenced for the crime, nor has the ransom money been recovered. Unanswered questions remain to this day in this case as to the probity of the investigation and prosecution of this crime. Given these circumstances, this is an appropriate case for the Court to use its discretion, to award Mr. Piper his attorney fees and costs incurred in his lengthy, complex and successful attempt to obtain release of the requested records about a significant crime in our nation's history.

Plaintiff has demonstrated that he has "substantially prevailed" in this matter and is entitled to an award of attorney's fees and costs. Pursuant to 5 U.S.C. § 552(a)(4)(E) and the reasons stated above, this Court shall order the United States Department of Justice to pay plaintiff Harry C. Piper, III, $72,157.25 in attorney's fees and $1,955.37 in costs. A separate order shall issue this date.

### *ORDER*

In accordance with the written submissions of the parties, the law, the facts, and the memorandum opinion issued this date, it is hereby

ORDERED that Plaintiff's Motion for an Award of Attorney's Fees [107] is hereby GRANTED; and it is further

ORDERED that pursuant to 5 U.S.C. § 552(a)(4)(E) the United States Department of Justice pay plaintiff Harry C. Piper, III, $72,157.25 in attorney's fees and $1,955.37 in costs.

SO ORDERED.

---

**10.** The work done from June 25, 2003 through July 21, 2003 is left intact as this work was appropriately compensable.