Catherine COTTON, Appellee,

v.

I. Michael HEYMAN, Secretary, The
Smithsonian Institution,
Appellant.

No. 94–5014.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 14, 1995.

Decided July 11, 1995.

Robert L. Shapiro, Asst. U.S. Atty., Washington, DC, argued the cause for appellant. With him on the briefs were Eric H. Holder, Jr., U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, DC.

David C. Vladeck, Washington, DC, argued the cause for appellee. With him on the brief were Brian Wolfman and Alan B. Morrison, Washington, DC.

Before BUCKLEY, WILLIAMS, and SENTELLE, Circuit Judges.

SENTELLE, Circuit Judge:

The Smithsonian Institution (the "Smithsonian") appeals an award of attorneys' fees under the Freedom of Information Act ("FOIA"). 5 U.S.C. § 552(a)(4)(E) (1994). Specifically, the Institution argues that the district court erred in holding the Smithsonian an agency under FOIA. *See id.* at § 552(f). The appellant also contends that, assuming *arguendo* that it is such an agency, the district court misapplied the public-benefit prong of the four-part test to determine whether Catherine Cotton, the eligible FOIA plaintiff here, is entitled to attorneys' fees. *See Tax Analysts v. United States Dep't of Justice,* 965 F.2d 1092, 1093 (D.C.Cir.1992). For purposes of this appeal, we accept the district court's holding that the Smithsonian is indeed an agency under FOIA. However, we agree with the Smithsonian that the district court erred in its application of the public-benefit prong. Because the district court's award of fees was based entirely on this misapplication, we reverse the award.

## I. BACKGROUND

On October 18, 1991, plaintiff filed a FOIA request, *see* 5 U.S.C. § 552 (1994), with the Office of General Counsel of the Smithsonian for documents contained in the Office of the Inspector General regarding the Smithsonian museum shops. Plaintiff had worked as a reorder buyer for these shops prior to her termination, and she believed these documents would facilitate her preparation of an employment discrimination suit. The Smithsonian denied plaintiff's FOIA request, asserting it was not an agency as contemplated by FOIA. Plaintiff then filed this suit to obtain the documents she requested. The

Smithsonian moved to dismiss, again maintaining it was not covered by FOIA.

On March 18, 1992, the district court ruled that the Smithsonian was in fact an agency subject to FOIA. The court then directed the Smithsonian to process plaintiff's request and prepare a Vaughn index for those records it intended to withhold. See Vaughn v. Rosen, 484 F.2d 820 (D.C.Cir.1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). The Smithsonian complied with the court's instruction. In addition, the Smithsonian voluntarily released to plaintiff two of the four relevant documents it had located.

The parties then filed cross motions for summary judgment regarding the Smithsonian's decision to withhold the two remaining documents pursuant to FOIA privacy exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6) and (b)(7)(C). The Smithsonian also asked the district court to reconsider its holding that the Smithsonian was an agency subject to FOIA. On June 26, 1992, the court upheld the Smithsonian's withholding of the documents pursuant to FOIA exemption 6, but not exemption 7(C). The court, however, denied the Smithsonian's motion for reconsideration. The court also issued an order and judgment dismissing the case.

On July 27, 1992, the Smithsonian filed a notice of appeal from the district court's order and judgment entered on June 26, 1992. 798 F.Supp. 22. However, the Smithsonian moved to dismiss this appeal on August 14, 1992, and the motion was granted.

Plaintiff subsequently sought attorneys' fees. The Smithsonian opposed the request, arguing that under the four-part test for determining whether a prevailing FOIA plaintiff ought to receive such fees, plaintiff was not entitled to an award. See Chesapeake Bay Found., Inc. v. U.S. Dep't of Agric., 11 F.3d 211, 216 (D.C.Cir.1993), cert. denied, —— U.S. ——, 115 S.Ct. 315, 130 L.Ed.2d 277 (1994). On December 14, 1993, the district court, applying the four-part test, granted the fee applications. The Smithsonian appealed this fee award, including the determination that it is an agency under FOIA.

## II. DISCUSSION

FOIA allows a district court to "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). In determining whether an eligible FOIA litigant is entitled to fees, we have held that at least four factors must be considered: 1) the public benefit derived from the case; 2) the commercial benefit to the plaintiff; 3) the nature of the plaintiff's interest in the records; and 4) whether the government has a reasonable basis for withholding the requested information. Chesapeake Bay Found., 11 F.3d at 216. In addition, "although the test of entitlements involves a balance of several factors, there can be no doubt that a party is not entitled to fees if the government's legal basis for withholding requested records is correct." Id. (citations omitted); see also Nationwide Bldg. Maintenance, Inc. v. Sampson, 559 F.2d 704, 712 n. 34 (D.C.Cir. 1977) ("Certainly where the government can show that information disclosed after initial resistance was nonetheless exempt from the FOIA a plaintiff should not be awarded attorney fees under section 552(a)(4)(E)").

 Relying on this quoted language, the Smithsonian believes we must undertake a de novo review of the district court's determination that the Smithsonian is an agency under FOIA. Accordingly, if we conclude the lower court erred, and thus the Smithsonian's legal position is correct as to its right to withhold the documents, we must reverse the award of attorneys' fees. Plaintiff responds that we cannot reexamine this particular issue because it is moot. Specifically, she argues the Smithsonian released all nonexempt documents responsive to her request after the district court ruled the Smithsonian was subject to FOIA. The Smithsonian allegedly did so only because of the district court's ruling that it was subject to FOIA. Consequently, no justiciable controversy remains regarding this point. Plaintiff maintains that the Smithsonian, to preserve its right to appeal, should have sought a stay in the district court to permit it to withhold the

disputed records until the conclusion of appellate review.

■ Alternatively, plaintiff argues the appeal of this issue is untimely because it was not filed within 60 days of the district court's final order and judgment on June 26, 1992, disposing of the merits. *See* FED.R.APP.P. 4(a). Rather, the notice of appeal was filed on January 13, 1994, subsequent to the attorneys' fees proceeding. In support of this latter argument, plaintiff relies on the Supreme Court case, *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202–03, 108 S.Ct. 1717, 1721–22, 100 L.Ed.2d 178 (1988), holding that once a final decision on the merits is entered, for purposes of 28 U.S.C. § 1291, the losing party has no option to postpone its appeal, regardless of whether a pending request for attorneys' fees exists. *Id.*

■ While we believe plaintiff misunderstands the subtle issues involved here, we agree that we should not conduct a *de novo* review of the Smithsonian's agency status. Theories of mootness and untimeliness do not, however, guide our decision. Rather, we find the issue precluded by the doctrine of direct estoppel.[1] Plaintiff's argument that the Smithsonian's release of the two non-exempt documents moots the issue has potential force only insofar as the original proceeding on the merits was concerned. If the Smithsonian desired to appeal the district court's determination of its agency status, it could have asked for a stay to permit it to withhold the non-exempt documents until the conclusion of appellate review. *See Constangy, Brooks & Smith v. NLRB*, 851 F.2d 839, 841–42 (6th Cir.1988) (because all documents subject of the appeal have been released, appellate court is unable to grant relief).

Plaintiff's mootness argument has no applicability to this proceeding, however, because we are asked to address the correctness of the Smithsonian's position regarding its agency status in the context of an attorneys' fees examination, rather than in the original context of document disclosure. If we were to examine the correctness of the Smithsoni-an's position, we could still potentially grant relief in the form of denying attorneys' fees. Consequently, for purposes of plaintiff's mootness argument, it is immaterial that the Smithsonian released its non-exempt documents during the merits phase.

Similarly, plaintiff's timeliness argument has no bearing on the facts of this case. The Smithsonian was incapable of appealing its status under FOIA at the close of the merits proceeding because it had won a favorable judgment regarding the two remaining documents. *See Showtime Networks, Inc. v. FCC,* 932 F.2d 1, 4 (D.C.Cir.1991) ("It is the general rule that a party may not appeal from a disposition in its favor"). The district court upheld the Smithsonian's position that these two documents fell within a FOIA exemption. Because the Smithsonian had already mooted the court's adverse agency ruling, *see supra,* there was nothing left to appeal. Plaintiff's reliance on *Budinich* in support of her timeliness argument is inapplicable. In that case, the appellant brought an action to recover employment compensation allegedly due. While a jury awarded him compensation, the appellant was dissatisfied with the size of the verdict. *Budinich,* 486 U.S. at 197, 108 S.Ct. at 1719. However, the appellant waited until completion of the attorneys' fees proceeding to appeal the verdict. *Id.* at 198, 108 S.Ct. at 1719–20. The Court held the original decision on the merits was final, and thus the appeal of the verdict subsequent to the district court's attorneys' fees determination was untimely. *Id.* at 202, 108 S.Ct. at 1721–22.

*Budinich* is distinguishable from this case on two grounds. First, unlike the case at bar, the appellant in *Budinich* was legally able to appeal the original verdict when it was delivered, but instead waited until the resolution of the attorneys' fees proceeding to appeal it. Second, the appeal regarding the size of the verdict could in no way implicate the outcome of the fee award. In contrast, the issue of the Smithsonian's agency status may directly affect the award of attorneys' fees if we were to examine the correct-

---

1. Direct estoppel, as opposed to collateral estoppel, governs the preclusive effect of a litigated issue in a separate proceeding within a single

suit. *See* 18 CHARLES A. WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE and PROCEDURE, § 4418 (1981).

ness of the Smithsonian's position, as suggested by *Chesapeake Bay.*

■ While we find plaintiff's arguments meritless, we nevertheless conclude the doctrine of issue preclusion leads us to reject an independent examination regarding the correctness of the Smithsonian's legal position. Generally, issue preclusion bars the relitigation of specific issues decided in a prior proceeding between the same parties. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982). In this case, the district court determined the Smithsonian was an agency under FOIA during the merits proceeding. Under principles of issue preclusion, the Smithsonian could not relitigate this issue at the district court level during the attorneys' fees proceeding. The Smithsonian argues, however, that this court should not be bound by the original district court holding because the Smithsonian, as a prevailing party, was unable to appeal it. We are indeed mindful that under settled law, "a prevailing party is not allowed standing to appeal unfavorable findings, and the findings do not preclude later litigation of the same issues." 18 CHARLES A. WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE and PROCEDURE § 4433. *See also White v. Elrod,* 816 F.2d 1172, 1174 (7th Cir.), *cert. denied,* 484 U.S. 924, 108 S.Ct. 286, 98 L.Ed.2d 246 (1987) ("The idea is that the finding is not sufficiently reliable, without the opportunity for appellate review of it, to be made incontestable in a subsequent suit").

■ Nevertheless, we find the Smithsonian's argument a red herring. The Smithsonian was unable to appeal the agency issue in the original proceeding not only because it was a prevailing party, but more importantly, because it voluntarily released the non-exempt documents to plaintiff after the district court's preliminary ruling. The Smithsonian was a prevailing party primarily because it *voluntarily* mooted the agency issue in the interim. In so doing, it had failed to preserve its appeal. If the Smithsonian had

sought a stay, allowing it to keep possession of the documents until the conclusion of appellate review, this court could have already decided that issue on the merits. *See* 18 CHARLES A. WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE and PROCEDURE § 4418 (failure to appeal part of the proceeding may defeat an appeal of the remainder by issue preclusion so long as it is clear that the appealing party has failed to preserve the common issue). Furthermore, the attorneys' fees proceeding should have been entirely foreseeable on the part of the Smithsonian. The Smithsonian made the legal choice to release its two non-exempt documents. It cannot now cry foul at the consequence of its own conduct.[2]

In sum, this case is an appeal from the fee award, not from the order directing the Smithsonian to process plaintiff's FOIA request as to the non-exempt documents, nor from the order denying plaintiff's request as to the other documents. While the Smithsonian cannot appeal the latter orders, its appeal of *the fee award* is neither untimely nor moot: The notice of appeal from the December 14, 1993 fee award was filed January 13, 1994; and, should we find reversible error in the district court's fee award, we can grant appropriate relief—denial of attorneys' fees.

We have said that the Smithsonian lost its opportunity to dispute the district court's legal conclusion that the Smithsonian is an agency, as that issue was decided in *the merits proceeding* that the Smithsonian voluntarily mooted. The district court's decision in the properly appealed *fee award proceeding,* however, rests on a four-prong test that includes a determination regarding the reasonableness of the Smithsonian's decision to withhold the documents. The Smithsonian did not forfeit its right to argue *the reasonableness* of its position that it is not an agency—the basis on which it withheld the non-exempt documents—even though it forfeited its right to appellate review of the *correctness* of that position; and its various arguments as to the error of the district

---

2. We stress, however, that the district court's determination regarding the Smithsonian's status under FOIA is binding only between these two parties. The Smithsonian is free to relitigate the issue against another party in a separate proceeding. *See American Fed'n of Gov't Employees, Council 214 v. FLRA,* 835 F.2d 1458, 1462 (D.C.Cir.1987) (issue preclusion will apply against the government only if mutuality of parties exists).

court's decision that it is an agency are necessarily also arguments that its position on that issue is *at least reasonable.*

■ With this in mind, we turn to the district court's December 14, 1993 decision. The Smithsonian argues that the district court erred as a matter of law in applying the public-benefit prong of the four-part balancing test in determining whether plaintiff was entitled to attorneys' fees under FOIA. The court found the public benefit derived from the case substantial. The court asserted its holding that the Smithsonian is an agency subject to FOIA would "greatly increase the amount of information available to the public." The court did not evaluate the value of the particular documents released, but focused solely on the precedential value of its holding.

We hold that the district court misapplied the public-benefit prong, interpreting it far too broadly. Because the district court's misinterpretation is as to a matter of law and not a finding of fact, our review is *de novo.* In *Fenster v. Brown,* 617 F.2d 740, 744 (D.C.Cir.1979), we observed that the release of any government document benefits the public by increasing its knowledge of its government. However, we held that Congress did not have this broadly defined benefit in mind when it amended FOIA to authorize attorneys' fees for those who substantially prevailed under 5 U.S.C. § 552(a)(4)(E). *Id.* The public-benefit prong "speaks for an award of [attorney's fees] where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Id.* (quoting *Blue v. Bureau of Prisons,* 570 F.2d 529, 534 (5th Cir.1978)). The only way to comport with this directive is to evaluate the specific documents at issue in the case at hand.

Plaintiff's reliance on *Halperin v. Dep't of State,* 565 F.2d 699 (D.C.Cir.1977), is misplaced. Plaintiff asserts that we held in *Halperin* that even where a FOIA plaintiff does not succeed in obtaining records, the plaintiff may be entitled to fees if the suit compels an agency to comply with FOIA. While this characterization of our dicta is on one level correct, *see id.* at 706 n. 11, we only addressed the issue of whether Halperin was

a "prevailing party" under FOIA, and thus potentially eligible to collect fees. *Id.* We never engaged in the four-factor balancing test at issue here to determine whether Halperin was actually entitled to fees, and hence did not even consider the public-benefit element.

The district court's interpretation presupposes that a public benefit exists by sole virtue of the potential release of present and future information as a result of the precedent set in the present case. Such an inherently speculative observation is contrary to our position in *Fenster,* and inconsistent with the structure of FOIA itself. FOIA contains several exemptions from disclosure, requiring a balance of the public interest in disclosure with the government's interest in withholding the information. Thus, FOIA recognizes the public interest, whatever its weight, must at times bow to other interests, such as privacy concerns. *See* 5 U.S.C. § 552(b)(6) and (b)(7)(C).

■ In this case, no evidence exists that the release of the two non-exempt documents will contribute to the public's ability to make vital political choices. Plaintiff does not even argue this point. Rather, she sought these documents for the sole purpose of facilitating her employment discrimination suit.

■ Because the district court found the public benefit in this case so great, the court spent little, if any, time analyzing the remaining parts of the test. The second and third parts focus on the "commercial benefit" to the plaintiff and the "plaintiff's interest." These two factors are "closely related and often considered together." *Tax Analysts,* 965 F.2d at 1095. When a litigant seeks disclosure for a commercial benefit or other personal reasons, an award of fees is usually inappropriate. *Id.* Regarding these two criteria, the district court simply asserted plaintiff did not receive a direct commercial benefit from the disclosure of the documents. In addition, the district court did not even attempt to analyze the fourth prong of the attorneys' fees test: the reasonableness of the government's position. The court simply assumed that regardless of the position's reasonableness, the weightiness of the public

benefit of the court's ruling that the Smithsonian was subject to FOIA directed the court to award attorneys' fees.

■ Because we hold that the court misapplied the public-benefit prong, we will address the reasonableness of the government's position ourselves. The government "need only have 'a colorable basis in law' for the court to consider the 'reasonable basis in law' factor in determining a FOIA plaintiff's entitlement to attorney's fees." *Chesapeake Bay Found.*, 11 F.3d at 216 (quoting *Nationwide Bldg. Maintenance*, 559 F.2d at 712 n. 34). *See also Cuneo v. Rumsfeld*, 553 F.2d 1360, 1366 (D.C.Cir.1977) ("What is required is a showing that the government had a reasonable basis in law for [its position] and that it had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.").

We conclude that the Smithsonian's position regarding its agency status under FOIA is reasonable. Prior to 1974, the Administrative Procedure Act's ("APA") definition of "agency" applied to the term "agency" in FOIA, as FOIA was simply a subsection of the APA. The Administrative Procedure Act defined agency as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency" with a few exceptions not relevant here. 5 U.S.C. § 551(1). In 1974, however, Congress amended FOIA to include a further definition of agency. Under the present version of FOIA, the "term 'agency' as defined in section 551(1) of this title includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(f). Congress thus incorporated in FOIA the APA definition, quoted above, and added the FOIA definition of agency to expand, rather than limit, its coverage. "Congress sought to encompass entities that might have eluded the APA's definition in § 551(1), which FOIA had incorporated by reference." *Energy Research Found. v. Defense Nuclear Facilities Safety Bd.*, 917 F.2d 581, 583 (D.C.Cir.1990).

In determining whether an entity fits the agency definition under FOIA, we have never developed bright line rules. Rather, we have generally employed a fact-specific functional approach. "[A]ny general definition can be of only limited utility to a court confronted with one of the myriad organizational arrangements for getting the business of the government done." *Washington Research Project, Inc. v. Department of Health, Educ. and Welfare*, 504 F.2d 238, 245–46 (D.C.Cir. 1974), *cert. denied*, 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975). "The unavoidable fact is that each new arrangement must be examined anew and in its own context." *Id.* at 246. Inevitably, such a fact intensive test lacks a strong predictive element.

We first employed this functional approach in *Soucie v. David*, 448 F.2d 1067 (D.C.Cir. 1971). At issue was whether the Office of Science and Technology ("OST") was an agency under FOIA. The OST, located in the Executive Office of the President, was authorized to evaluate the scientific research programs of other agencies. The OST had inherited this evaluative function from the National Science Foundation. The OST also advised and assisted the President in achieving coordinated federal policies in science and technology. *Id.* at 1073–74.

At the time of our decision in *Soucie*, FOIA still borrowed the general APA definition of agency. We reasoned in that decision that in the context of entities in the Executive Office of the President, the APA conferred agency status on any administrative unit with substantial independent authority in the exercise of specific functions. *Id.* at 1073. Applying that reasoning, we held that the OST was an agency under FOIA. *Id.* at 1075. We concluded that if the OST's "sole function" were limited to advising and assisting the President, the OST would not be an agency. *Id.* However, the OST also possessed the independent function of evaluating federal programs, which gave the entity agency status.

In another case decided prior to the 1974 FOIA amendments, however, we determined the agency status of specific entities existing outside the Executive Office of the President, called initial review groups ("IRGs"). *Washington Research Project, Inc. v. Department*

*of Health, Education, and Welfare,* 504 F.2d 238 (D.C.Cir.1974). These groups evaluated research proposals sponsored by the National Institute of Mental Health, and were comprised of nongovernmental consultants who functioned in panels organized around specialized disciplines within the field of biomedicine. Because these entities existed outside the Executive Office of the President, we did not apply *Soucie*'s sole function test. Nevertheless, we still employed a functionalist framework, holding that the important consideration regarding agency status was whether the relevant entity had "any authority in law to make decisions." *Id.* at 248. As the IRGs made only recommendations, not final decisions, we found them not to be agencies.

Subsequent to the 1974 amendments, we have had the opportunity to return to this issue. In *Rocap v. Indiek,* we held that the Federal Home Loan Mortgage Company ("FHMLC") was a governmental controlled corporation under FOIA's definition of agency. 539 F.2d 174, 180 (D.C.Cir.1976). While we noted that the presence of a federal charter was not dispositive regarding whether the FHMLC was a government controlled corporation, the FHMLC was "subject to such substantial federal control over its day-to-day operations" that it fell under FOIA. *Id.* at 177. We rejected the FHMLC's argument that an entity had to receive federal funds to be an agency because several agencies exist under the Act receiving no appropriated funds. Likewise, we dismissed the FHMLC's contention that Civil Service Commission jurisdiction is a prerequisite to agency status, as many recognized agencies fall outside such jurisdiction. *Id.* at 179.

We have also had recent occasion to apply a functional approach to an entity not within the President's Executive Office, the Defense Nuclear Facilities Safety Board, although the approach was not controlling in that decision. In *Energy Research Found.,* we held that the Board was an agency under FOIA. 917 F.2d at 584–85. While specifically disclaiming reliance on *Soucie*'s sole function test because the Board was not within the President's Executive Office, we concluded that even under the *Soucie* test, the Board was an agency. The Board "conduct[ed] investigations, which has long been recognized as an inci-

dent of legislative power delegated to agencies by Congress." *Id.* at 584 (internal quotations omitted). The Board also formally evaluated the Energy Department's standards relating to defense nuclear facilities.

Plaintiff presents a litany of arguments in support of her position that the Smithsonian is an agency both as an independent establishment and a government controlled corporation. We need only highlight her argument. First, she asserts that the Institution is federally chartered and has a staff of which 70% are federal employees. These employees are subject to civil service laws and regulations. Also, federal law entitles the Smithsonian to designate its employees as special police to patrol its buildings and grounds. These police can make arrests for violations committed on the property. 40 U.S.C. § 193t (1994). The Smithsonian, in addition, receives and administers both federal and non-federal funding. The Smithsonian is also subject to multiple reporting requirements, such as those found at 20 U.S.C. §§ 57, 58, and 65(a) (1994). Moreover, the Institution exercises power in setting research priorities. For instance, it has plenary authority over all scientific research conducted in the Canal Zone Biological area.

While plaintiff is correct that the Institution is federally chartered, receives federal appropriations, and that many of its employees are subject to civil service laws, we observed in *Rocap* that these factors, in and of themselves, are insufficient to demonstrate agency status. While *Rocap* specifically concerned governmental corporations, the Smithsonian could reasonably interpret this language to apply to the "independent establishments" provision in FOIA's agency definition, as well. In addition, the Smithsonian can rationally argue plaintiff's reliance on the Smithsonian's ability to hire its own police force carries little probative weight in that many private museums employ their own security personnel. The Smithsonian can also reasonably contend that its power to allocate its own scarce resources regarding research priorities does not reflect the sort of "substantial independent authority" discussed in *Soucie* necessary to obtain agency status. Finally, specifically regarding plaintiff's contention that the Smithsonian is a governmental corporation, the Smithsonian

can argue it is not listed as one at 31 U.S.C. § 9101 (1994), which enumerates the government-owned corporations. It can also at least reasonably argue its enabling statute at 20 U.S.C. § 41 (1994) does not establish a corporation, but rather asserts that certain officials "are constituted an establishment by the name of the Smithsonian Institution." *Id.*

In short, the Smithsonian could reasonably interpret our precedent to support its position that it is not an agency under FOIA. Thus, even assuming that the Smithsonian is incorrect in asserting that it is not an agency, as a matter of law, its position is at least a reasonable one.

### III. CONCLUSION

Because we conclude that there is no public benefit in a release of the Smithsonian documents, and that the Smithsonian's legal position is reasonable, we have no need to review for an abuse of discretion the district court's evaluation of the remaining factors: the "commercial benefit" to the plaintiff and the "plaintiff's interest." Consequently, we reverse the award of attorneys' fees to plaintiff.

*It is so ordered.*