**WILDLANDS CPR, Plaintiff,**

v.

**UNITED STATES FOREST SERVICE, Defendant.**

**No. CV–06–101–M–DWM.**

United States District Court,
D. Montana,
Missoula Division.

May 14, 2008.

David Bahr, Eugene, OR, Timothy M. Bechtold, Bechtold Law Firm, Missoula, MT, for Plaintiff.

Mark Steger Smith, Office of the U.S. Attorney, Billings, MT, for Defendant.

**ORDER**

DONALD W. MOLLOY, District Judge.

This action is against the Forest Service under the Freedom of Information Act ("FOIA"), seeking information regarding the Forest Service's travel management programs. After a year of pretrial litigation, the parties participated in a court-mediated settlement conference. The parties resolved the dispute in November of 2007 through an Amended Consent Decree. *See* dkt # 51.

On April 23, 2008, a hearing was held on Plaintiff's Petition for Costs and Attorney Fees (dkt # 56) based on the Court's Order of April 14, 2008 (dkt # 74). Testimony and argument was taken on the following issues: 1) whether the Open Government Act amendments to the Freedom of Information Act apply to Plaintiff's petition; 2) whether Plaintiff is entitled to fees and costs associated with requests 3.2 and 6 when Defendant had a reasonable basis in law for denying them; 3) whether Plaintiff is entitled to attorney fees and costs if it failed to exhaust administrative remedies; and 4) what amounts are reasonable for fees and costs associated with this action. For the reasons set forth below, Plaintiff's Petition for Costs and Attorney Fees is granted in part and denied in part.

**I.**

A two-part analysis governs FOIA fee awards. A prevailing party must demonstrate both eligibility and entitlement. *Long v. U.S. Internal Revenue Service,* 932 F.2d 1309, 1313 (9th Cir.1991).

**A. Eligibility**

What law applies to determine whether Plaintiff is eligible to receive attorney's fees is the first issue. Attorney's fees are available if the party has "substantially

prevailed." At issue is the definition of "substantially prevailed" found at Section 4 of the Openness Promotes Effectiveness in our National ("OPEN") Government Act, which President Bush signed into law in December of 2007, while this case was pending. Plaintiff argues that the Act applies retroactively to this case. Nonetheless, at oral argument, Plaintiff seemed to argue that the analysis established in *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)—an analysis the OPEN Government Act replaced—controls here.

Defendant asserts that the provisions of the OPEN Government Act do not apply, and so the analysis in *Buckhannon* controls. *Buckhannon* rejected the "catalyst theory" of fee awards (i.e., where the filing of a FOIA action is the catalyst for a government agency producing the information sought, a plaintiff is eligible for attorney fees). Eligibility under *Buckhannon* required a "material alteration of the legal relationship of the parties" effectuated by, for example, "an enforceable judgment on the merits or a court-ordered consent decree." *Id.* at 604, 121 S.Ct. 1835. *Buckhannon* rejected the catalyst theory of fee awards because "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change. Our precedents thus counsel against holding that the term 'prevailing party' authorizes an award of attorney's fees without a corresponding alteration in the legal relationship of the parties." *Id.* at 605, 121 S.Ct. 1835. The Court held that settlement agreements enforced through consent decree "create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *Id.* at 604, 121 S.Ct. 1835 (internal quotations and citations omitted).

The OPEN Government Act, which amended FOIA, states that a FOIA "complainant has substantially prevailed if the complainant has obtained relief through either 1) a judicial order, or an enforceable written agreement or consent decree, or 2) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). The Act thus restated the *Buckhannon* analysis on the consent-decree issue, and revived the catalyst theory, i.e., where a complainant obtains relief via a voluntary or unilateral change in position by the agency, the complainant has substantially prevailed and is eligible for attorney fees. *See* 5 U.S.C. § 552(a)(4)(E)(ii). The catalyst theory assumes that a voluntary or unilateral change in an agency's position is induced by the complainant's lawsuit. Put simply, the OPEN Government Act guts the *Buckhannon* analysis. It is no longer necessary to show that the material alteration of the parties' positions has the "necessary judicial imprimatur." It is enough to point to the existence of a consent decree or to a voluntary or unilateral change in the agency's position.

Defendant argues that the OPEN Government Act does not apply because Plaintiff filed its suit 18 months prior to the passage of the Act. Alternatively, the Forest Service takes the position that even if the OPEN Government Act applies, Plaintiff is not eligible for attorney fees because its lawsuit did not motivate the Forest Service to produce the information requested under FOIA. As for the existence of a consent decree, Defendant argues that Plaintiff did not "obtain relief" through the decree as the Act requires, because there is "a complete disconnect between the basis for the lawsuit as filed and the terms of the resolution that was ultimately struck." Put differently, as Defendant stated at oral

argument, "What we settled on was not the same as the complaint."

Plaintiff makes the better argument, set forth in its Petition, that the OPEN Government Act applies. "A court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is a statutory or legislative history to the contrary." *Bradley v. Richmond Sch. Bd.*, 416 U.S. 696, 712, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). Defendant points to no legislative history to the contrary here, and instead argues that 1) imposing attorney fees here under the OPEN Government Act would result in manifest injustice; and, alternatively, 2) the "presumption against retroactivity" defeats the general rule from *Bradley*.

Defendant's second argument is easily dispatched by *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). At issue in *Landgraf* was a change in the law, while litigation was pending on appeal, regarding fee awards. The Court said,

> Although [*Bradley* ] suggests a categorical presumption in favor of application of all new rules of law, we now make it clear that *Bradley* did not alter the well-settled presumption against application of the class of new statutes that would have genuinely "retroactive" effect. . . . [T]he attorney's fee provision at issue in *Bradley* did not resemble the cases in which we have invoked the presumption against statutory retroactivity. Attorney's fee determinations, we have observed, are "collateral to the main cause of action" and "uniquely separable from the cause of action to be proved at trial."

*Id.* at 277, 114 S.Ct. 1483 (citing *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 451–452, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982)). The presumption against retroactivity does not apply here.

As for Defendant's first argument, *Bradley* identified three "concerns . . . relative to the possible working of an injustice": (1) the nature and identity of the parties, (2) the nature of their rights, and (3) the nature of the impact of the change in law upon those rights. *Bradley*, 416 U.S. at 717, 94 S.Ct. 2006. Defendant argues that imposing attorney fees under the OPEN Government Act triggers the second and third concerns. Specifically, at oral argument Defendant argued that imposing attorney fees under the OPEN Government Act "would effect a very substantial prejudice upon the interest of the Forest Service in terms of applying a much lower standard of attorney fees." This argument misunderstands the nature of the rights *Bradley* addressed.

"The Court has refused to apply an intervening change to a pending action where it has concluded that to do so would infringe upon or deprive a person of a right that had matured or become unconditional." *Id.* at 720. The Court in *Bradley* directly addressed the very argument Defendant makes here, when it found "no such matured or unconditional right affected by the application of" the intervening statutory amendments at issue in *Bradley* that altered the standard for awarding attorney fees. *Id.* Defendant points to no mature right or a right which has become unconditional so that the application of the OPEN Government Act's standards for awarding fees would infringe on it. Defendant's argument is simply that the OPEN Government Act lowers the standard for fee awards in FOIA cases. Both parties concede this much, hence the dispute over whether it applies. It does.

■ Because the Act applies to this case, the question becomes whether Plaintiff "has obtained relief through either 1) a judicial order, or an enforceable written agreement or consent decree, or 2) a vol-

untary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). The parties resolved their dispute through entering a consent decree. *See* dkt. # 51. It seems Plaintiff is thus entitled to attorney fees under the OPEN Government Act.

Anticipating this outcome, Defendant raises the argument that although there was a consent decree here, Plaintiff did not "obtain relief" through it. At oral argument, Defendant insisted that there is "a complete disconnect between the basis for the lawsuit as filed and the terms of the resolution that was ultimately struck." Defendant suggests that Plaintiff's willingness to enter a consent decree—after a year of pretrial activity including the production of documents and mediation—the terms of which are not identical to the relief sought in Plaintiff's complaint, leads to the conclusion that Plaintiff has not "obtained relief."

Defendant's argument is not persuasive. Where the OPEN Government Act applies, the existence of a consent decree that resolves the dispute means that Plaintiff has obtained relief. If the consent decree did not afford Plaintiff relief, it is hard to imagine why Plaintiff would consent to it. The Forest Service points to nothing in the Act or to any other authority establishing the proposition that "obtaining relief through a consent decree" requires that whatever Plaintiff takes through the consent decree must be precisely what it sought in its complaint. This suggestion borders on the logical fallacy of *reductio ad absurdum,* considering the nature of civil litigation and the range of outcomes, relative to the parties' starting positions, court-mediated settlements produce.

Likewise, the consent decree's language agreeing that the parties did not intend the decree to establish a prevailing party does not render the Act inoperable. The parties cannot circumvent the law by contract. The decree states that it "is not intended to designate either Party as 'prevailing party' for purposes of assessing attorney fees and costs, and is not and cannot under any construction be effective in doing so." The law, on the other hand, states that where a complainant has obtained relief through a consent decree, it has substantially prevailed and is therefore eligible for attorney fees. Here, the consent decree reflects the parties' understanding that entering it would not, by its terms, establish a prevailing party. It did not need to because the Act does.

Under the principles set forth in *Bradley* and *Landgraf,* the OPEN Government Act applies to this case. Plaintiff obtained relief through a consent decree, and therefore, pursuant to 5 U.S.C. § 552(a)(4)(E)(ii), Plaintiff "substantially prevailed" and is eligible for attorney fees.

## B. Entitlement

█ If a plaintiff demonstrates eligibility for fees (i.e., proves that he has "substantially prevailed"), the district court may, in the exercise of its discretion, determine that the complainant is entitled to an award of attorney fees. *Long v. U.S. I.R.S.,* 932 F.2d 1309, 1313 (9th Cir.1991). In exercising its discretion on this question, the district court must consider four criteria: (1) the public benefit from disclosure, (2) any commercial benefit to the plaintiff resulting from disclosure, (3) the nature of the plaintiff's interest in the disclosed records, and (4) whether the government's withholding of the records had a reasonable basis in law. *Id.* These four criteria are not exhaustive, however, and the court may take into consideration whatever factors it deems relevant in determining whether an award of attorney fees is appropriate. *Id.*

■ The first factor weighs in favor of granting fees here. Plaintiff brought suit under FOIA to obtain information from which it could determine whether Defendant was in compliance with the environmental policies the Congress has established through the enactment of laws— policies the federal agencies, including the Forest Service, are legally obligated to implement and enforce. This is the very purpose of FOIA in this context. The disclosure of such information allows the public to evaluate its own political decisions that ultimately produce the character of the agencies charged with this obligation. *See, e.g., Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C.Cir.1995) ("The public-benefit prong speaks for an award of [attorney fees] where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices."). *Id.* (internal quotations and citations omitted).

The second factor is not at issue. This factor relates to "the potential for private commercial benefit" as an incentive to encourage a plaintiff's pursuit of a FOIA claim. *See Church of Scientology of Cal. v. U.S. Postal Serv.*, 700 F.2d 486, 494 (9th Cir.1983). The third factor likewise carries little weight—it also requires considering any pecuniary or commercial benefit a Plaintiff seeks to obtain through a FOIA claim. *Id.*

The parties' arguments really center on the fourth factor. At oral argument, the Forest Service insisted that with respect to items 3.2 and 6 of Plaintiff's FOIA request, the Forest Service had a reasonable basis in law for not disclosing the requested information. The Defendant pointed to the language of the requested items, which included the words "any documents related to ...". Defendant argued that this language made it impossible for the Forest to know what information Plaintiff wanted. Plaintiff, on the other

hand, emphasized that while the Forest Service might have reasonably concluded that the size and scope of the request was problematic, a reasonable construction of the request would not preclude making a good faith attempt to produce relevant information based on the request.

In its filings, the Forest Service submitted the Second Declaration of Rita M. Morgan. Dkt # 79. Ms. Morgan is the FOIA and Privacy Officer for the Department of Agriculture. *See* Morgan Decl. at 1. In her declaration, Ms. Morgan states, as did Defendant at oral argument, that because requests 3.2 and 6 included language requesting "all records that relate to" various topics, "the FOIA team was concerned about the unreasonable breadth of the search for potentially responsive records." *Id.* at 4. Ms. Morgan states that such a request "could include every item that even mentions [a topic's] existence, whether in personnel files, NEPA records, online maps, or traffic citations." *Id.* She goes on to claim that Plaintiff did not offer or provide any clarification, modification, or guidance relative to these requests. *Id.* at 5–6. She insists that the Forest Service made a good faith effort "to try and understand what records the requester sought."

Plaintiff on the other hand, submitted the Declaration of James R. Furnish. Dkt # 85. Mr. Furnish is a former Deputy Chief of National Forest Systems and supervisor of the Siuslaw National Forest in Oregon, with experience in responding to FOIA requests. Furnish Decl. at 1–2. Furnish believes that the information requested in items 3.2 and 6 is clear and that the requests reasonably describe the information sought. He notes that request 3.2 follows the sentence that begins the request by asking for "The current copy of the Forest Transportation Atlas ..." and any other documents describing various categories of roads. *Id.* at 2. After this

sentence, request 3.2 clarifies that the request "includes any documents relating to off road vehicles ... such as reports on impacts to endangered or sensitive species[, etc.]" The Furnish affidavit states that a reasonable construction of the request would understand it as asking for the Forest Transportation Atlas, a document the law requires every forest to maintain, and "information supporting the development, updating, and maintenance of the FTA." *Id.* at 3.

With respect to item 3.2, the Plaintiff has the better view. While there is no doubt the request could *possibly* be interpreted, as Ms. Morgan suggests, as asking for *any* information related in *any* manner to *every* road, no matter how attenuated the relationship might be (e.g., personnel files and traffic citations), taken in context, item 3.2 cannot *reasonably* be interpreted as such, and reasonableness is the touchstone here. At oral argument the Service made an argument similar to that it offers through Ms. Morgan's declaration. The argument is unpersuasive on either presentation. The FOIA contemplates a reasonable reading of requests by the producing agency. Construing any request under the FOIA so as to make the request onerous or absurd is a misapplication of the law and as such it is not reasonable.

As for item 6, the analysis is similar. It asks for documents relating to specific inventory items and processes for inventorying roads outside the listed inventory categories. Again, while the Forest Service could *possibly* have interpreted this request as asking for the most tenuously related information, such an interpretation is not *reasonable*. In any event, the record shows the Forest Service seems to have been most concerned with the size and scope of Plaintiff's request, not its ability to understand the request. This is the crux of its proffered reasons for its

failure to respond, not that it simply could not, from the requests, discern what information Plaintiff might be seeking. *See, e.g.,* Helena Guess on Items, July 28, 2006. The Defendant had no reasonable basis in law for not disclosing the requested information. Plaintiff is entitled to fees and costs.

**II.**

At oral argument the parties briefly addressed the issue of whether Plaintiff had exhausted its administrative remedies. The Court agrees with Plaintiff's argument that this issue is essentially a "side show." Under 5 U.S.C. § 522(a)(6)(C)(I), "Any person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph." Case law refers to this as "constructive exhaustion." *See, e.g., Spannaus v. U.S. Dept. of Justice,* 824 F.2d 52, 58 ("By 'deeming' exhaustion to occur on expiration of the relevant time limits, the statute provides for constructive exhaustion, which permits early 'accrual' of a cause of action in the interests of timely disclosure.").

■ "There are two time limit provisions that trigger constructive exhaustion. First, the agency has ten days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any [FOIA] request within which to 'determine ... whether to comply with such request.... Second, the agency has twenty days (excepting Saturdays, Sundays, and legal public holidays)' after receipt of ... [an administrative] appeal within which to make a determination on that appeal." *Id.* (citing 5 U.S.C. § 552(a)(6)(A)(I) and (ii)). Here, Plaintiff submitted a fee waiver request which Defendant denied. Plaintiff

appealed the denial, and Defendant did not "make a determination on that appeal" within the 20–day period prescribed by the statute. Plaintiff's cause of action accrued at this time. "Once constructive exhaustion occurs, any available administrative appeal—i.e., actual exhaustion—becomes permissive in the sense in which the term is used here; the requester may pursue it, but his failure to do so does not bar a lawsuit." *Id.*

### III.

Plaintiff's counsel claims it should be awarded attorney fees calculated at a rate of $280–$300 for Mr. Bahr and $200–$225 for Mr. Bechtold. Wildlands claims the attorney fees allocable to Mr. Bahr should be based on 267.30 hours, and those allocable to Mr. Bechtold at 38.5 hours. The Forest Service argues that both the fee amounts and hours are inflated and unreasonable.

The number of hours is not inflated. The parties' filings show that Plaintiff's counsel submitted a conservative estimate of hours worked in this matter, and did not include nonproductive time. Wildlands' counsel appears to have omitted time they could have included, opting instead to include only clearly compensable time.

■ On the other hand, the fee amounts Plaintiff suggests are high. Fees awarded must correspond to fees charged by attorneys of comparable skill, experience, and reputation in the community for similar work. *Dang v. Cross,* 422 F.3d 800, 814 (9th Cir.2005). Both Mr. Bahr and Mr. Bechtold have considerable experience and are reputable attorneys. Both brought specialized knowledge and skill to Plaintiff's action. Nevertheless, the fee amounts they suggest are high in the legal services market in the State of Montana.

Having considered the declarations the parties filed and testimony at oral argument on the issue of fees, I find that a $200/hour fee is appropriate for Mr. Bahr, and a $165/hour fee is appropriate for Mr. Bechtold. This results in a fee award of $59,812.50 as of the time Plaintiff filed its Petition for Fees and Costs. This amount represents $53,460 allocable to Mr. Bahr and $6,352.50 allocable to Mr. Bechtold. The costs Plaintiff seeks in the amount of $3,334.12 for copies, court fees, supplies and telephone service, and postage, is reasonable.

Plaintiff is awarded fees for Mr. Bahr's work in preparing and arguing for Plaintiff's Petition for Fees and Costs in the amount of $8,700 (or, 43.5 hours at $200/hour), and $855.37 in associated costs.

### IV.

For the reasons set forth above,

IT IS HEREBY ORDERED that Plaintiff's Petition for Costs and Attorney Fees (dkt # 56) is GRANTED in part and DENIED in part, as follows:

1. Plaintiff is awarded $68,512.50 in attorney fees;

2. Plaintiff is awarded $4,189.49 in costs.