TATEL, Circuit Judge,
concurring:
Agreeing completely with Judge Rogers’s application of our long-standing test for FOIA fee eligibility, I join her opinion in full. I write only to clarify a single point: that William Davy presents a paradigmatic case for the award of attorney’s fees even if we step back from the particulars of the test the dissent so maligns and focus instead on FOIA’s purposes. While recognizing the test as binding precedent, the dissent nonetheless casts aspersions on Davy’s case and subjects it to newly minted standards inconsistent with the very purpose of FOIA’s fees provision. Indeed, because the barriers the dissent would erect appear insuperable, I read it not as a dissent from this Court’s opinion, but from *1164 Congress’s decision to provide fees to prevailing FOIA requesters at all.
Begin with the first factor, which asks whether the FOIA requester pursued the litigation in the public interest. Maj. Op. 1159. The purpose of this inquiry is obvious: Congress meant to incentivize the pursuit of public informational interests, not the mining of government records for private advantage. E.g., Tax Analysts v. U.S. Dep’t of Justice, 965 F.2d 1092, 1095 (D.C.Cir.1992). But the dissent would ignore the purpose of the document request and ensuing litigation, focusing instead on whether the particular records released would be interesting to the public or would instead be greeted with “a yawn.” Dis. Op. 1167. As the facts of this very case demonstrate, however, assessing the content of the specific documents disclosed rather than the reasons they were requested makes little sense. Before suing, re-questers in Davy’s position have no idea what documents responsive to their FOIA requests might contain because the agency has told them nothing — here, it never even gave Davy a Vaughn index. In fact, Davy knew only that his request implicated matters of such enormous national concern that the CIA at first expressly refused to either confirm or deny the existence of responsive records. So Davy went to court seeking more information, exactly as Congress intended. Indeed, Congress created a fees incentive precisely so that people in Davy’s situation would sue where, as here, the agency digs in. Maj. Op. 1158; see also Nationwide Bldg. Maint., Inc. v. Sampson, 559 F.2d 704, 715 (D.C.Cir.1977) (“A grudging application of this [fees] provision, which would dissuade those who have been denied information from invoking their right to judicial review, would be clearly contrary to congressional intent.”). The dissent would force requesters to bear the risk that the revealed documents might ultimately be boring, but since no one in Davy’s position can know before suing what the requested documents say or even whether they exist, the dissent’s rule would in fact chill all FOIA suits, preventing the discovery of important and unimportant content alike. So long as the information sought was of a type the public might want to know, we should consider the objective underlying this element of our test met. Davy’s suit sought records regarding the assassination of an American president; we need know nothing more to find that the first factor favors him.
The dissent disagrees with this view of both the law and the facts. As to the law, the dissent argues that a FOIA request’s purpose is irrelevant, Dis. Op. 1167-68, citing our standard in Cotton v. Heyman, 63 F.3d 1115 (D.C.Cir.1995), which asks whether a request “is likely to add to the fund of information that citizens may use in making vital political choices,” id. at 1120 (internal quotation marks omitted). This argument founders on Cotton itself, which in fact applied its standard by looking to the purpose behind the FOIA request:
In this case, no evidence exists that the release of the two non-exempt documents will contribute to the public’s ability to make vital political choices. Plaintiff does not even argue this point. Rather, she sought these documents for the sole purpose of facilitating her employment discrimination suit.
63 F.3d at 1120 (emphasis added). As to the facts, the dissent disagrees with my representation of Davy’s request as one seeking records related to the assassination of President Kennedy. Dis. Op. 1167-68. Of course, this isn’t my representation, it’s the district court’s, see Davy v. CIA, 496 F.Supp.2d 36, 38 (D.D.C.2007) (“Davy’s FOIA request and subsequent litigation were intended to compel disclosure *1165 of information relating to the activities of a government agency (the CIA) in relation to a significant historical event .... ”), and the dissent never so much as mentions the deference we owe that finding. But even so, Davy’s request clearly did relate to the Kennedy assassination; as the dissent itself observes, “[m]uch of what Davy obtained was already in the public domain, released under the John F. Kennedy Assassination Records Collection Act.” Dis. Op. 1167-68 (emphasis added).
This brings us to the second and third factors, which inquire into the nature of the requester’s interest in the records and whether the requester can be expected to benefit commercially from obtaining the documents. Maj. Op. 1159-60. The reason for these inquiries is obvious as well: Congress did not intend to subsidize those who stand to profit from pursuing litigation and so need no subsidy. See, e.g., Cuneo v. Rumsfeld, 553 F.2d 1360, 1367 (D.C.Cir.1977) (“If the potential for private commercial benefit was sufficient incentive to encourage [plaintiff] to pursue his FOIA claim, the policy objectives of section 552(a)(4)(E) would be met and it would not be improper for the trial court to deny his request for attorney fees.”), abrogated on other grounds by Kay v. Ehrler, 499 U.S. 432, 438, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991). The dissent’s dismissive aside about whether Davy should qualify as a “journalist” under these elements of the test is thus a red herring. Nothing in the record suggests that Davy’s persistent interest in the Kennedy assassination was ever likely to earn him any pecuniary gain. To the contrary, uncontroverted record evidence demonstrates that absent the promise of fees, Davy lacked both the incentive and the ability to pursue his request through litigation. These factors thus favor him regardless of his scholarly or journalistic credentials.
That said, it is worth pausing to consider why we ask whether a requester pursues information in a journalistic capacity. Scholars, authors, and journalists straddle the incentive inquiry framed by the first three factors of the entitlement test. Always searching for information that the public will want to consume, journalists must surely be thought of as pursuing records in the public interest. At the same time, because they have a strong profit motive in that pursuit, they need fees less than most. Echoing the judgment of Congress as expressed in the legislative history, we have long resolved the tension by considering scholarly or journalistic interests to be public rather than private. See Maj. Op. 1160, 1161-62 (collecting authorities). The dissent faults that judgment, but in reality, it cannot itself decide which side of the debate to join. In one breath it decries awarding fees to large media organizations that profit from obtaining and reselling information, Dis. Op. 1166 & n. 1; in the next it faults Davy for his inability to prove that he had already revealed the information he obtained to the public, hypothesizing that the records went straight from some government file cabinet to Davy’s closet, id. at 1167. Of course, the only kinds of FOIA requesters who can prove that they almost immediately circulate the information they obtain belong to “the group that is in the business of profiting from the information when it winds up in their newspapers and magazines and TV shows.” Id. at 1166 n. 1. So in the dissent’s world no one can obtain fees: journalists circulate their information too successfully and so are excluded, while independent scholars such as Davy fail to circulate their information quickly or widely enough.
This Catch-22 is completely at odds with the intent of Congress’s fees provision. Scholars like Davy often lack resources and need more time to research their *1166 work. No single FOIA request is likely to produce the smoking gun that independently verifies their complicated hypothesis or grabs the public’s attention. That the requester wisely waits to evaluate and synthesize released records before broadcasting information to the public in no way undermines the fact that the records were sought in the public interest by an individual without adequate ability or incentive to sue.
A brief word on the entitlement test’s final element, which serves a different purpose from the first three. Asking whether the government had a reasonable basis for withholding documents, this fourth factor is intended to disincentivize requesters from complaining about reasonable with-holdings while incentivizing the government to promptly turn over — before litigation is required — any documents that it ought not withhold. That purpose will be ill-served if the government can prevail on this factor by saying nothing and forcing the requester to sue, only then to offer “no resistance,” Appellant’s Br. 19, as it did here. As we explained in Nationwide, 559 F.2d at 710, “[i]f the government could avoid liability for fees merely by conceding the cases before final judgment, the impact of the fee provision would be greatly reduced.” Were that so, “[t]he government would remain free to assert boilerplate defenses, and private parties who served the public interest by enforcing the Act’s mandates would be deprived of compensation for the undertaking.” Id. That is why we consider plaintiffs to have substantially prevailed if they win a stipulated release, and that is why the government’s argument is essentially foreclosed by Davy’s victory in his first appeal. See Davy v. CIA, 456 F.3d 162 (D.C.Cir.2006).
In short, our four-factor test is a heuristic, a somewhat crude mechanism for testing whether fees in a particular case are consistent with the purposes for which Congress subsidized FOIA litigation. We hardly need such a divining rod for Davy, whose entitlement to fees is clear as day. The dissent accuses us of rendering the test “more senseless,” Dis. Op. 1166, yet it is the dissent’s requirements that would divorce the test from the ends Congress intended FOIA fees to serve.